RELIABLE COLLECTION AGENCY, LIMITED, a Hawaiian Corporation, Plaintiff and Counterdefendant-Appellee, *v.* DAVID C. COLE and MARGARET COLE, Defendants and Counterclaimants-Appellants.

NO. 6356

AUGUST 24, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

504

OPINION OF THE COURT BY KIDWELL, J.

The plaintiff, Reliable Collection Agency, Inc. ("Reliable"), a Hawaii corporation licensed to engage in the business of debt collection, brought this action as an assignee of debts owed by the defendants ("the Coles") to two third parties not joined in the present action, Kapiolani Hospital and City Mill Co., Ltd. The Coles asserted as an affirmative defense that Reliable was engaged in the unauthorized practice of law by virtue of the debt collection practices it employed in the present action, and counterclaimed for damages and declaratory and injunctive relief based on such unauthorized practice of law.

This case is before us on an interlocutory appeal, allowed by the circuit court, from an order granting to Reliable a partial summary judgment which struck the Coles' affirmative defense and denied the Coles' cross-motion for partial summary judgment on their counterclaim. We affirm.

I

The Coles contend that Reliable was engaged in the unauthorized practice of law in that its activities impermissibly involved Reliable in the control of legal proceedings brought in the interest of its customers, put Reliable in an intermediary position between the creditors in whose interest claims were being prosecuted and the attorneys who actually appeared in court to present those claims, and placed Reliable in a primary attorney-client relationship with the attor-

neys who actually appeared to represent the interests of Reliable's customers. The facts which the Coles contend disclose the unauthorized practice of law by Reliable, and which the Coles seek to establish as the ground of their affirmative defense and counterclaim, may be summarized as follows:

Reliable is engaged in the business of soliciting accounts for collection, and engages in collection efforts on behalf of its customers through nonlegal procedures as well as legal proceedings. Reliable charges contingent fees for nonlitigation collection services. If collection cannot be effected through nonlitigation methods and Reliable determines that legal action is appropriate, Reliable procures assignments of the debts so that it can proceed to litigation. Creditors know that Reliable will go to court to collect debts if necessary, and are regularly informed that Reliable has facilities to provide the services of attorneys. Reliable recommends a certain law firm to its customers, and has a fee arrangement with this firm. When Reliable obtains assignments of debts, it gives no value in exchange, but promises to use its skills to seek collection through legal process. It charges a contingent fee of 50% of the amount recovered after its advances are deducted. Reliable assists in the preparation of legal papers, instructs the attorney when to appear in court, and generally handles all communications with its customers except for a brief meeting between the original creditor and the attorney shortly before trial. Reliable also has authority to vacate defaults and settle for installment payments without consulting its customers.

The Coles do not contend that the interposition of Reliable in the debt collection process has increased the liability to which they are subject by reason of their failure to satisfy their valid obligations, and nothing in the record before us would appear to support such a contention.

In the view we take of this case, it will not be necessary for us to consider whether the facts presented to the trial court disclosed that Reliable was engaged in the unauthorized practice of law. The threshold questions, upon which we affirm

the partial summary judgment, are whether the Coles may assert the alleged illegality as a ground for a damage claim or for declaratory or injunctive relief and whether the alleged illegality affected the Coles' liability in this action for the debts claimed by Reliable. These questions are somewhat interdependent.

## II

The practice of law by others than those "licensed or authorized so to do by an appropriate court, agency, or office or by a statute of the State or of the United States" is prohibited by HRS § 605-14. The attorney general or any bar association in this State is authorized to maintain an action for violation of this prohibition. HRS § 605-15.1. Remedies for such violations include declaratory and injunctive relief as well as criminal sanctions. However, the statute expressly reserves to this court its inherent and statutory powers to deal with this subject. HRS § 605-16.

In enacting § 605-15.1 to give standing to the attorney general or any bar association to maintain actions with respect to the unauthorized practice of law, the legislature stated expressly that it was not its purpose to infringe upon the power of any court to prevent the unauthorized practice of law. Sec. 1, Act 45, Sess. L. 1975. Rule-making power with respect to process, practice, procedure and appeals is expressly granted to this court by Article V, Section 6 of the Hawaii Constitution. What conduct constitutes the practice of law is not defined by statute or rule of court.

We approach the question of the Coles' right to assert Reliable's alleged illegal conduct, as a ground for their claims for damages and for declaratory and injunctive relief, upon the assumption that the alleged conduct which has been summarized would if proved constitute unauthorized practice of law which is prohibited by § 605-14. But more must appear to make this conduct actionable at the suit of the Coles.

In *Cort v. Ash*, 422 U.S. 66 (1975), a federal criminal statute prohibited corporations from making expenditures in connection with federal elections. The Court held, in an

action brought by a stockholder seeking damages on behalf of the corporation, that corporate directors were not liable for spending corporate funds in violation of the statute. Factors which are relevant in determining whether a criminal statute creates a private claim for damages were enumerated as follows:

"In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted' . . . — that is, does the statute create a . . . right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . ." 422 U.S. at 78.

The Court viewed the statute as directed against the corrupting influence of corporate wealth upon national elections and not against violations of their fiduciary obligations on the part of corporate directors. Accordingly, the statute was held not to create a right of damages on behalf of the corporation.

In *Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1 (1977), the Court dealt with a claim that a corporation's violation of federal securities regulations had prevented the plaintiff from acquiring sufficient shares to obtain control of the corporation. There was no claim that the plaintiff had paid an excessive price for the shares which it had acquired. It was held, on the basis of the rule of *Cort v. Ash, supra,* that no claim for damages had been made out, since the regulations were directed at the protection of purchasers against price manipulation and were not concerned with corporate control.

Nothing in the legislative history of § 605-14 suggests that the statute was enacted for the especial benefit of persons whose relationship with the proscribed practices is as tangential as the Coles'. Legislative committee reports express a primary objective to enable proceedings with respect to the unauthorized practice of law to be brought in the circuit courts pursuant to a statutory prohibition rather than solely in

this court pursuant to its inherent powers. The evil sought to be averted by requiring practitioners to be licensed is described in a way which makes it apparent that the legislature was concerned chiefly with the welfare of the recipients of legal services. No purpose to protect or benefit persons against whom legal proceedings might be directed by unlicensed practitioners is visible. House S.C. Rep. 612, Senate S.C. Rep. 700, 28th Legislature, Territory of Hawaii, 1955. Nor does the statute or its legislative history disclose a purpose to create a remedy in the form of a damage claim by persons in the Coles' position. To the contrary, the Act of which § 605-14 was a part, Act 150, Sess. L. 1955, made it the duty of the prosecuting officials of the Territory to prosecute violations. With respect to this provision the legislative committee reports cited above explained that "such is desirable in order to make uniform the enforcement of the law in the several judicial circuits". The legislature could scarcely have also contemplated that enforcement of the prohibition of unauthorized practice of law should be effected by recognizing a private remedy exercisable at the discretion of individuals in the several circuits.

The Coles have failed to support their claim for damages by any showing or allegation which is sufficient to create a genuine issue with respect to pecuniary damages suffered by them as a result of the alleged illegal conduct. It is not asserted that their liabilities have been increased or that they have been subjected to any expense which would not have been incurred in their defense of actions brought by their creditors upon the same debts that are claimed here. It is contended that damages might be predicated upon mental or emotional distress suffered by the Coles or upon invasion of their privacy, or upon a view of the alleged illegal conduct as constituting unfair or deceptive acts or practices or unauthorized prosecution of a civil action. All of the arguments advanced by the Coles, however, depend essentially upon § 605-14 and require that the Coles meet the tests of a private remedy under that statute. Unless those tests are met, we do not reach the question of damages.

It is somewhat surprising that among the numerous deci-

sions which deal with collection practices as the unauthorized practice of law, we have been referred to only one in which the court had before it a claim for damages founded on the unauthorized practice of law asserted by a debtor defendant in an action brought upon an assigned claim. In *J. H. Marshall & Associates, Inc. v. Burleson,* 313 A.2d 587 (D.C. App. 1973) the debtor defendant counterclaimed for damages against the plaintiff collection agency upon allegations of unauthorized practice of law. On appeal from denial of plaintiff's motion to dismiss the counterclaim, the only issue considered was the procedural propriety of this method of raising the damage claim. In affirming, the appellate court dealt only with the procedural question and the decision is not persuasive authority with respect to the existence of a private remedy of damages.

The principles expressed in *Cort v. Ash, supra,* should be applied here. Even if it be assumed that the Coles suffered some cognizable injury caused by Reliable's unauthorized practice of law, which question we do not reach, we conclude that their claim for damages was properly dismissed. To the extent that their claims for declaratory and injunctive relief depend on the existence of a private remedy for the assumed injury, those claims must also fail. There remains for consideration, however, whether the Coles have a right of action, as "private attorneys general", for the injury to the public or social interest if Reliable's conduct infringes the statutory prohibition.

Sections 605-15.1 and 15.2 provide, when read together, that the attorney general or any bar association has such a right of action for injunctive and declaratory relief. The legislative history reviewed above does not suggest an intent to create such a right of action in any individual and, as we have pointed out, points to the contrary in emphasizing a concern for uniformity of enforcement policy among the judicial circuits. In *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453 (1974), the passenger association asserted a private right to enjoin discontinuance of passenger trains in violation of the Amtrak Act. The Act

expressly authorized the attorney general to sue to prevent such violations. The Court read the Act as creating a public cause of action, maintainable by the attorney general, to enforce the Act and found no ground for implying a private cause of action. In the absence of any evidence of legislative intent to create a private cause of action, the authorization of the attorney general was held to be exclusive.

"A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." 414 U.S. at 458.

The statutory authorization of the attorney general and any bar association to seek declaratory and injunctive relief in cases of unauthorized practice of law, contained in § 605-15.1, should be regarded as exclusive for similar reasons. Thus the statutory prohibition of unauthorized practice of law does not entitle the Coles to any of the relief sought by their counterclaim. The Coles argue, nevertheless, that support may be found in the inherent powers of the courts to regulate the practice of law.

As has been noted, in enacting §§ 605-14 to 17 the legislature expressly deferred to the inherent powers of the judiciary to prevent the unauthorized practice of law. § 605-16; Sec. 1, Act 45, Sess. L. 1975. However, we have not provided by rule of court the manner in which these powers shall be invoked. Other courts have viewed it as inappropriate and productive of confusion to entertain proceedings for the regulation of the practice of law by persons with only private interests and without public responsibility. *Cf. R. J. Edwards, Inc. v. Hert*, 504 P.2d 407 (Okla. 1972), *Dade-Commonwealth Title Ins. Co. v. North Dade Bar Ass'n, Inc.*, 152 So.2d 723 (Fla. 1963). Compare *J. H. Marshall & Associates, Inc. v. Burleson*, *supra*, sustaining an injunction against unauthorized practice of law issued at the suit of an attorney.

While we are not subject to the "case or controversy" requirement of Article III of the United States Constitution, the prudential considerations which have been suggested in the federal cases on standing persuade us that a party should

not be permitted to assume the role and responsibility of a public official to enforce public law without a personal interest which will be measurably affected by the outcome of the case. *Cf. Warth v. Seldin,* 422 U.S. 490 (1975); *Sierra Club v. Morton,* 405 U.S. 727 (1972). This seems especially true where there is nothing to indicate any laxity on the part of the public official charged with the enforcement responsibility. We conclude that the Coles' counterclaim was properly dismissed.

II

The question whether the Coles may assert the alleged unauthorized practice of law by Reliable as a defense to this action upon assigned claims involves considerations which are somewhat different, although they are conceptually closely related to those raised by the counterclaim. The Coles assert that the transactions between Reliable and the Coles' creditors are so tainted by illegality that enforcement of rights which depend upon those transactions should be denied. Again, we approach the question upon the assumption that the facts which the Coles sought to establish, if true, would disclose that Reliable was engaged in unauthorized practice of law.

We must also note again that no pecuniary injury has been suffered by the Coles by reason of Reliable's allegedly illegal conduct. In these circumstances, allowance of the defense of illegality is a collateral method of enforcement of the prohibition of unauthorized practice. Nothing in §§ 605-14 to 17 or their legislative history suggests that the legislature contemplated this means of enforcement of the statutory prohibition. We have concluded that reasons which are largely prudential prevent recognition of a private remedy which would enable the Coles to initiate proceedings to enforce the statute. We go over some of the same ground in considering whether they may engage in enforcement of the statute by denying recovery to Reliable.

The Coles premise their affirmative defense primarily upon an often repeated rule that proceedings in an action instituted or conducted by one not entitled to practice law are a nullity, and refer us to *McKenzie v. Burris,* 255 Ark. 330, 500 S.W.2d 357, 61 A.L.R.3d 250 (1973) and cases cited therein. But these decisions deal with the effect of court proceedings in which the interests of parties were represented by unlicensed persons and not by attorneys. We do not have unlicensed persons before the court in the present case. The conduct of Reliable which is alleged to constitute unauthorized practice occurred out of the presence of the court. Duly licensed attorneys represented Reliable at all stages of the present proceeding.

In *J. H. Marshall & Associates, Inc. v. Burleson, supra,* the District of Columbia Court of Appeals affirmed the dismissal of an action brought upon an assigned debt by a collection agency where conduct similar to that in which Reliable is said to have engaged was held to constitute unauthorized practice of law. This holding accompanies, without discussion, the court's conclusion that the defendant had a right of action to enjoin the unauthorized practice, a conclusion we have rejected in the present case. We have been referred to no other authority which supports the Coles' assertion of their affirmative defense.

Since the Coles have asserted no impairment or jeopardy of a private interest as the result of Reliable's conduct of its collection business, their affirmative defense rests upon much the same policy considerations which we have found inadequate in respect of their counterclaim. The federal courts have faced similar concerns in considering the defense of illegality under the antitrust laws. In *Kelly v. Kosuga,* 358 U.S. 516 (1959), an onion grower agreed to purchase onions which the seller had threatened to dump on the market for the purpose of depressing the going market price. In the seller's action for the purchase price, the buyer asserted the illegality of the contract under the Sherman Act. The Court declared that the defense of antitrust illegality in actions for the price under purchase contracts is confined to cases in which an illegal excessive price is claimed, a judgment for which would

give effect to one of the forbidden restraints of trade.

"Past the point where the judgment of the Court would itself be enforcing the precise conduct made unlawful by the Act, the courts are to be guided by the overriding general policy . . . . 'of preventing people from getting other people's property for nothing when they purport to be buying it.' . . . . Supplying a sanction for the violation of the Act, not in terms provided and capricious in its operation, . . . . is avoided by treating the defense as so confined." 358 U.S. at 520-21.

Considerably more reason exists to avoid unjust enrichment of a defendant where, as here, the debt sought to be enforced arose quite separately from the illegal conduct upon which the defense is based. However, the possibility that a defendant would receive a windfall as the result of the successful assertion of an illegality defense in an action brought by a collection agency might not alone be a sufficient reason to deny the defense if there were persuasive policy considerations in favor of that method of achieving compliance with the prohibition upon unauthorized practice of law. The thrust of policy considerations, however, appears to be toward the opposite conclusion. In *Viacom Int'l Inc. v. Tandem Productions, Inc.*, 526 F.2d 593 (2d Cir. 1975) the Second Circuit Court of Appeals looked beyond the unjust enrichment rationale of *Kelly v. Kosuga, supra,* to such considerations. The court pointed out that recognition of an antitrust defense in a contract action vastly expands the complexity and expense of the litigation and that the threat of such involvement might tend to coerce parties into abandonment of claims. For this additional reason, it was held that the antitrust law should be enforced in the manner provided by the statute and not by the indirect means of recognition of the defense of illegality in a contract action.

Similar policy considerations support denial of the Coles' affirmative defense. Without disparaging in any way the value of citizen interest in law enforcement and particularly in the proper regulation of the practices of collection agencies, we believe that sanctioning individualized enforcement ef-

514

forts would have disadvantages which clearly outweigh the possible benefits of such enhancement of enforcement pressures. Enforcement of criminal law through prosecution by public agencies, whether in conventional criminal proceedings or by injunctive process as authorized by the applicable statute in this case, produces a final disposition of the question of criminality in a single proceeding. If every collection case might be turned into a criminal prosecution by assertion of the defense of illegality, each case would dispose of the issues raised as between the parties but there would be no final determination with respect to the propriety of the practices of the collection agency which would foreclose the raising of the same question again for judicial inquiry in any number of other cases. Even if the decision in any single case could be made to be generally dispositive of the issues considered, the collection practices relevant for consideration in the particular case would necessarily be limited to those which affected the particular defendant and a comprehensive inquiry into the practices of a single collection agency might require numerous individual cases. Variation in the conclusions reached by different judges or in different judicial circuits would likely become difficult to resolve.

Since definition and regulation of the practice of law is inherently a function of this court, we think it is particularly appropriate for us to determine that such regulation shall take place in a uniform and coordinated manner. We conclude that the alleged unauthorized practice of law on the part of Reliable does not support the Coles' affirmative defense.

The judgment is affirmed.

*John Ishihara* (Legal Aid Society of Hawaii of counsel) for Defendants and Counterclaimants-Appellants.

*James M. Sattler* for Plaintiff and Counterdefendant-Appellee.