MIAMI VALLEY HOSPITAL, Appellee,

v.

COMBS, Appellant.

[Cite as *Miami Valley Hosp. v. Combs* (1997), 119 Ohio App.3d 346.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16178.

Decided April 25, 1997.

*Mark S. Foster,* for appellee.

*Jason David Fregeau,* for appellant.

BROGAN, Judge.

In this case, appellant, Lillian Combs, appeals from the judgment of the trial court granting summary judgment in favor of appellee, Miami Valley Hospital ("MVH"), and awarding the hospital the sum of $423.87, together with interest and costs. On appeal, Combs raises the following two assignments of error:

"I. The trial court erred as a matter of law in denying Ms. Combs's motion for summary judgment.

"II. The trial court erred as a matter of law in entering summary judgment for Plaintiff and directly awarding Plaintiff its full damages."

Before addressing the assignments of error, a few preliminary comments are in order. At first, and even second, glance, this case appears to be the proverbial "tempest in a teapot," particularly when the financial amount at stake is compared with the somewhat voluminous filings and discovery, including a deposition that was taken. Also notable, and dismaying in this court's opinion, is the complete absence of a single citation from appellant that is legally pertinent to appellant's claims. Although numerous cases are cited in appellant's brief, not one offers guidance on anything relevant to the only contested issue in this case, i.e., whether appellant may claim as a defense the fact that a third party, not part of the suit, is engaging in the unauthorized practice of law.

Factually, this case arises from services the hospital provided to Combs on October 12 and 13, 1993. Although Combs's insurer paid most of the bill on October 28, 1993, the account at the hospital showed a balance of $535.11. Statements of the amount due were mailed to Combs by Miami Valley approximately every thirty days, until March 9, 1994, but no payment was ever received on the bill. In December 1993, MVH called Combs and left a message on her recorder, but the call was not returned. On January 11, 1994, MVH again called, but did not leave a message. The same day, Combs called MVH and said she would need a payment plan. At that point, the hospital asked for $100 per month, and indicated that if payments of this amount were not made, the account would be turned over for collection. MVH's policy is that it does not like to hold any account over twenty-four months, and accounts under $600 should be paid within six months.

Combs said she did not know if she could afford that amount. However, no payments of any amount were made, and on January 15, 1994, the account was referred to Computer Credit, Inc., for generation of a three-letter series of collection letters, approximately fourteen days apart. MVH then referred the account to Advantage Financial Services, Inc. on March 9, 1994. After Advantage unsuccessfully attempted to collect on the account, Advantage sent MVH a request for authorization to refer the account to an attorney. The request was

received by MVH on August 7, 1994, and on August 16, 1994, MVH authorized referral of the suit to attorney Richard Knostman.

For approximately seventeen years, MVH and Advantage have had an ongoing written contract for collection work. Under this contract, as with all of Advantage's grantor contracts, MVH makes the decision on whether an account is referred to an attorney. The normal procedure for accounts is that a collector at Advantage first attempts to collect. If unsuccessful, the collector sends the case to the legal department of Advantage for review. Barb Andrews of the legal department then sends the case to the grantor, noting that Advantage has been unable to collect on the account. Advantage also notifies the grantor of any assets the consumer has and recommends to the grantor that if the grantor chooses to pursue legal action, that avenue is the only way Advantage sees the debt being collected. Normally, cases involving less than $200 are not recommended for legal action. However, the grantor is the one who decides whether to pursue a lawsuit.

The record does not reflect exactly when the account was received by Knostman. However, attorney Mark Foster, who eventually filed the action, entered into partnership with Knostman in mid–May 1995. After that time, Foster sent a letter to Combs stating that he was representing MVH concerning the account. At the same time this letter was sent, a complaint against Combs was prepared and placed in a file folder. Foster then set a review date on his tickler system for October 15 or 16, 1995, to file the complaint. Foster did not file on that date, and on approximately October 27 or 28, 1995, he received a letter from attorney Jason Fregeau regarding Combs and MVH. In response, Foster wrote Fregeau on November 6, 1995, and sent him copies of the documents (Combs's account) that were eventually attached to the complaint. At that time, Foster told Fregeau to call if he wished to resolve the matter in an amicable fashion, meaning, since Fregeau's client owed the money, what payment arrangements could she live with for purposes of satisfying the debt?

Subsequently, on November 15, 1995, Foster filed the complaint in Dayton Municipal Court, and Fregeau filed an answer on behalf of Combs, asserting as an affirmative defense the fact that Advantage was engaging in the unauthorized practice of law. However, the trial court rejected this defense and awarded judgment against Combs in the amount of $423.87. (This amount represented a reduction in the original amount, based on a credit that should have been given for Combs's insurer's original timely payment. This discrepancy was discovered by MVH after suit was filed.) With regard to Combs's affirmative defense, the trial court found that MVH, which was named as plaintiff, was the real party in interest and that the issue of the illegality of MVH's relationship with Advantage did not affect the central issue in the case, *i.e.*, whether Combs owed MVH for

services she received. Further, in granting summary judgment against Combs on the amount due, the trial court observed that Combs's primary concern seemed to be the disbursement of payment between MVH, Advantage, and Foster, once the amount owed was paid. The court also commented that the disbursement was of no concern to the court.

With this background in mind, we will now address the two assignments of error raised by Combs.

I

At the outset, we note that Combs offered no evidence below disputing the amount of the debt and has assigned no error to the money judgment against her. Therefore, whether Combs owed the debt to MVH is not at issue in this appeal. In the first assignment of error, Combs contends that the trial court erred in denying her motion for summary judgment, and raises these two supporting sub-issues: (1) that MVH engaged in the unauthorized practice of law and (2) that a lawsuit filed as the direct result of illegal activity is void. Unfortunately, as we noted above, Combs has not furnished any authority supporting her position. For example, the major case relied on by Combs is *Med Controls, Inc. v. Hopkins* (1989), 61 Ohio App.3d 497, 573 N.E.2d 154. In *Med Controls,* a collection agency and a medical clinic entered into an agreement for the agency to collect the clinic's overdue accounts. When a dispute arose, the agency brought a contract action against the clinic. However, the court held the contract unenforceable between the parties because it violated public policy by authorizing the collection agency to practice law without a license. This authority and other similar authorities cited by Combs have no bearing on the present case, since no contract dispute between Advantage and MVH is at issue.

In reviewing Combs's motion for summary judgment, we note that the claims of unauthorized practice of law relate to alleged actions of Advantage, not the hospital. In essence, Combs is attempting to assert conduct of a third party, not present in this action, as a defense to a debt that appears conceded. Even under the most liberal construction of Combs's theories, claims against a nonparty are irrelevant and tangential to the validity of the debt owed. Assuming for purposes of argument, however, that MVH had been the party accused of the unauthorized practice of law, we have nonetheless failed to find any authority in Ohio allowing a party to raise the illegality of a collateral contract as an affirmative defense to an action on a debt. This issue has also not been widely considered by other jurisdictions, although some authority does exist.

For example, in *Reliable Collection Agency, Ltd. v. Cole* (1978), 59 Hawaii 503, 584 P.2d 107, a collection agency, as an assignee of accounts, sued the debtors,

who then asserted the agency's unauthorized practice of law as an affirmative defense and counterclaim. The trial court granted partial summary judgment to the agency, struck the affirmative defense, and denied the debtors' partial motion for summary judgment on the counterclaim. In affirming, the Supreme Court of Hawaii first found no private right of action for damages or injunctive relief under statutes governing the unauthorized practice of law. *Id.* at 505–513, 584 P.2d at 109–112. Based on similar reasoning, the court also rejected the affirmative defense of the agency's illegal conduct. *Id.* at 511–514, 584 P.2d at 112–113. Additional factors discussed in rejecting the affirmative defense were the absence of pecuniary injury suffered by the agency's actions; the fact that the conduct in question occurred out of the presence of the court, *i.e.,* no unlicensed persons were before the court; and the lack of persuasive policy considerations supporting private enforcement of prohibitions against the unauthorized practice of law. Moreover, the court's decision indicates that for purposes of analysis, the form of the relief sought is not dispositive. A counterclaim is a direct attempt at enforcing the prohibition, while an affirmative defense is a collateral method. *Id.* at 511–513, 584 P.2d at 112. However, if a private remedy does not exist, the attempt to assert it would be invalid in either situation.

██ We concur in the reasoning expressed in *Reliable,* and apply its holding to the affirmative defense raised in this case. Like the statutory scheme in Hawaii, the Ohio statute and rules relating to the unauthorized practice of law do not contemplate a private right of action or remedy. In this context, R.C. 4705.01 contains the prohibition against unauthorized practice of law, and states as follows:

"No person shall be permitted to practice as an attorney and counselor at law, or to commence, conduct, or defend any action or proceeding in which he is not a party concerned, either by using or subscribing his own name, or the name of another person, unless he has been admitted to the bar by order of the supreme court in compliance with its prescribed and published rules."

This statute does not contain a specific remedy for violations. However, for purposes of gauging whether a private remedy is implied where statutory authorization is not expressly set forth, the following test is applied:

" 'First, is the plaintiff "one of the class for whose especial benefit the statute was enacted," * * *—that is, does the statute create a * * * right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? * * * Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?' " (Emphasis deleted.) *Strack v. Westfield Cos.* (1986), 33 Ohio App.3d

336, 337, 515 N.E.2d 1005, 1007, quoting *Cort v. Ash* (1975), 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26, 36.

■ In applying this standard, we do not find Combs within the class for whose benefit the statute would have been created. Instead, based on traditional application of the prohibition on unauthorized practice, R.C. 4705.01 appears to have been designed to protect lawyers and their clients. For example, courts have held that the practice of law as authorized by the state is a "special privilege in the nature of a franchise," which may be protected by the possessor from invasion. *Land Title Abstract & Trust Co. v. Dworken* (1934), 129 Ohio St. 23, 1 O.O. 313, 193 N.E. 650. Additionally, a potential conflict of interest can arise if the interests of a third party are interposed between a licensed attorney and his client. *Med Controls,* 61 Ohio App.3d at 497, 573 N.E.2d at 154. However, the case law and statute evidence no intent to "benefit persons against whom legal proceedings might be directed by unlicensed practitioners." *Reliable,* 59 Hawaii at 507, 584 P.2d at 110. This would seem to be particularly true in situations like the present, where the "unlicensed practitioner" is not even before the court, and where there are no allegations that the unauthorized practice increased the liability to which the defendant was exposed.

■ As an additional matter, the rules implementing R.C. 4705.01 reveal an explicit intent to deny a private remedy, or to restrict any remedy to the procedures contained in the rules. Implementation of the prohibition against the unauthorized practice of law is covered by Gov.Bar R. 7, which establishes a Board of Commissioners on the Unauthorized Practice of Law ("board") and further details certain procedures for investigation and prosecution of proceedings arising from complaints about the unauthorized practice of law. Each bar association in the state is allowed to establish a committee on the unauthorized practice of law, and both these committees and Disciplinary Counsel are required to investigate any matter referred to them or coming to their attention. If warranted by the investigation, a formal complaint is filed with the board, which then holds a formal hearing and sends its findings and recommendations to the Ohio Supreme Court. Following the filing of the board's decision, the Supreme Court can issue whatever orders it deems proper, after allowing a hearing for objections, if any are filed within the required time.

Subsection 4 of Gov.Bar R. 7 indicates that the procedure outlined above is the exclusive avenue for complaints, by stating as follows:

"All proceedings arising out of complaints of the unauthorized practice of law shall be brought, conducted, and disposed of in accordance with the provisions of this rule."

In view of the wording of the above rule and the complete process outlined in Gov.Bar R. 7 for the resolution of complaints, we do not believe a private cause of action is contemplated for claims such as those asserted by Combs in this action. Moreover, given the existence of this exclusive remedy, we can only conclude that a private remedy is not consistent with the underlying purposes of R.C. 4705.01 and Gov.Bar R. VII.

The court in *Reliable* also commented on the strong policy argument against allowing this type of affirmative defense to avoid payment of a debt. First, the court discussed a case in which a buyer who was sued for the price of goods had interjected as a defense the fact that the contract of sale was illegal under the Sherman Antitrust Act. *Id.,* 59 Hawaii at 511–513, 584 P.2d at 112. The court noted that this illegality defense had been rejected based on the policy against supplying a sanction not authorized by the Antitrust Act and on the policy against allowing a party to obtain another's property for nothing. Then, the *Reliable* court went on to comment as follows about its own case:

"Considerably more reason exists to avoid unjust enrichment of a defendant where, as here, the debt sought to be enforced arose quite separately from the illegal conduct upon which the defense is based. However, the possibility that a defendant would receive a windfall as the result of the successful assertion of an illegality defense in an action brought by a collection agency might not alone be a sufficient reason to deny the defense if there were persuasive policy considerations in favor of that method of achieving compliance with the prohibition upon unauthorized practice of law. The thrust of policy considerations, however, appears to be toward the opposite conclusion. * * *

"Without disparaging in any way the value of citizen interest in law enforcement and particularly in the proper regulation of the practices of collection agencies, we believe that sanctioning individualized enforcement efforts would have disadvantages which clearly outweigh the possible benefits of such enhancement of enforcement pressures." *Id.,* 59 Hawaii at 513–514, 584 P.2d at 113.

Among the disadvantages was the possibility of a lack of uniform enforcement resulting from varying conclusions reached by different judges or in different circuits. Additionally, while a particular case might resolve the issues between the parties, it would not prevent the same question from being raised in later cases. *Id.* Again, we agree with this reasoning and find it equally applicable in Ohio. Confining these kinds of issues to proceedings before the board allows uniform resolution and a dispositive determination about the practices of a particular collection agency or other entity. We also note that courts in jurisdictions besides Hawaii have refused to allow civil actions for the unauthorized practice of law to be entertained. See *Miller v. Credit Bur. of Warrick Cty.*

(1973), 156 Ind.App. 341, 296 N.E.2d 673, and *Janssen v. Guaranty Land Title* (Mo.App.1978), 571 S.W.2d 702.

Having found persuasive authority to guide us, and having received nothing from Combs to warrant a different conclusion, we find no error in the trial court's decision to deny summary judgment to Combs. Accordingly, the first assignment of error is overruled.

## II

■ In the second assignment of error, Combs contends that the trial court erred in awarding summary judgment to MVH and awarding MVH the full amount of its damages. To support this assignment of error, Combs argues that the trial court had a duty to stop illegal fee-splitting and to discourage the unauthorized practice of law. Appellant bases this contention on the fact that money collected is first applied to court costs and the attorney then receives twenty percent of the remainder. MVH also receives fifty to sixty percent of the money, and the rest goes to Advantage for its services. However, the entire amount collected by the attorney is remitted to Advantage, which then sends checks back to the attorney and to MVH on the account. Combs claims that this activity violates attorney disciplinary rules, which prohibit attorneys from dividing legal fees or forming partnerships with nonlawyers. See DR 3–1–02 and DR 3–1–3.

Assuming for the sake of argument that this activity is improper, we note that Combs has again cited no case law supporting her contention that the trial court should have refused to grant summary judgment on the full amount of the debt to MVH. Typical of the cases cited by Combs is *Royal Indemn. Co. v. J.C. Penney Co., Inc.* (1986), 27 Ohio St.3d 31, 27 OBR 447, 501 N.E.2d 617, in which the Ohio Supreme Court affirmed a trial court's decision to revoke the *pro hac vice* admission of an out-of-state law firm. The revocation was based on the misrepresentation by attorneys in the firm about the availability of discovery materials sought by the opposing party. The Supreme Court noted that while the Ohio Supreme Court has original jurisdiction of all matters pertaining to the practice of law, the trial court "retains the 'authority and duty to see to the ethical conduct of attorneys in proceedings before it * * * [and] [u]pon proper grounds it can disqualify an attorney.'" *Id.* at 34, 27 OBR at 449, 501 N.E.2d at 620, quoting *Hahn v. Boeing Co.* (1980), 95 Wash.2d 28, 34, 621 P.2d 1263, 1266.

Presumably, based on this general authority, the trial court could have disqualified Foster as attorney for MVH if Foster were engaged in unethical conduct. Likewise, a grievance about Foster's conduct could be filed and ultimately could be heard by the Ohio Supreme Court, if justified. See Gov.Bar R. V. However, these remedies have not been sought by Combs, *i.e.*, the record

below is devoid of a request by her to disqualify Foster as counsel for MVH. Instead, Combs is attempting to avoid payment of her debt to MVH by raising collateral issues. Again, this is simply an indirect method of enforcing the sanction against the unauthorized practice of law. Since we have already decided that R.C. 4705.01 does not allow either direct or collateral enforcement of this prohibition other than through the enforcement procedure set forth in Gov.Bar R. VII, we find no error in the trial court's award of summary judgment to MVH on the debt owed by Combs. Accordingly, the second assignment or error is also overruled.

Having found no merit in Combs's assignments of error, we affirm the judgment of the trial court in favor of MVH. Costs are assessed against Combs.

*Judgment affirmed.*

GRADY and WILSON, JJ., concur.

RICHARD K. WILSON, J., retired, of the Second Appellate District, sitting by assignment.