607 S.E.2d 519

Lorrie McMAHON, individually, and as the representative of The Class of All Similarly Situated Individuals, Plaintiffs Below

v.

ADVANCED TITLE SERVICES COMPANY OF WEST VIRGINIA, a West Virginia corporation; Advanced Real Estate Services Corporation of America, a Pennsylvania corporation; Nations of Pennsylvania, Inc., a foreign corporation authorized to do business in the State of West Virginia, successor in interest to Advanced Title Services Company of West Virginia and/or Advanced Real Estate Services Corporation of America, Brian C. Ulanowicz, Penny L. Rose, and James Monroe Whitecotton, Defendants Below.

No. 31706.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 2004.

Decided Dec. 3, 2004.

Daniel J. Guida, Weirton, Robert P. Fitzsimmons, Wheeling, for Plaintiff.

John Preston Bailey, Bailey, Riley, Buch & Harman, Wheeling, Amicus Curiae for the West Virginia State Bar.

Bren J. Pomponio, Daniel F. Hedges, Mountain State Justice, Inc., Charleston, Amicus Curiae for Mountain State Justice, Inc.

Thomas A. Heywood, Sandra M. Murphy, Eric L. Calvert, Bowles Rice McDavid Graff & Love, Charleston, Amicus Curiae for The West Virginia Association of Community Bankers, Inc. and The West Virginia Bankers Association, Inc.

James W. St. Clair, Huntington, Amicus Curiae for The West Virginia Bar Association.

William David Wilmoth, Steptoe & Johnson, Wheeling, for Advanced Title Services Company of West Virginia, et al.

Paul D. Ellis, Baker & Hostetler, Columbus, OH, Jerry R. Linscott, Baker & Hostetler, Orlando, FL, Pro Hac Vice for Advanced Title Services Company of West Virginia, et al.

James F. Companion, Schrader, Byrd & Companion, Wheeling, for Brian C. Ulanowicz, et al.

William E. Kovacic, General Counsel, Maureen K. Ohlhausen, Deputy Director, Office of· Policy Planning, Federal Trade Commission, Washington, DC, Amicus Curiae for The Federal Trade Commission.

Stephen M. Horn, Assistant United States Attorney, U.S. Department of Justice, Wash-

ington, DC, Amicus Curiae for The United States of America.

STARCHER, J.:

In the instant case we partially approve and partially disapprove a circuit court's Answers to certified questions, and we remand the case for further proceedings.

## I.

### *Facts & Background*

This case arises from an order of the Circuit Court of Brooke County, West Virginia granting partial summary judgment and certifying certain questions to this Court pursuant to the provisions of *W. Va. Code*, 58–5–2 (1998).

In the case before the circuit court in which the partial summary judgment and certification order was entered, the plaintiff is "Lorrie McMahon, individually, and [seeking to be] the representative of the Class of All Similarly Situated Individuals."[1] The defendants below are Advanced Title Services Company of West Virginia ("ATS"), a West Virginia corporation, and several related corporations and individuals.[2]

The plaintiff's complaint, *inter alia*, alleges that:

(1) the defendants, by engaging in the unauthorized and unlawful practice of law when providing real estate title and closing services to the plaintiff and similarly situated persons, overcharged and misled regarding and misrepresented the nature of the defendants' services and qualification to perform such services and the extent to which such services were performed, and thereby committed actionable negligence, conversion, embezzlement, and obtaining money by false pretenses, and were unjustly enriched; and that

(2) the defendants, by engaging in the unauthorized and unlawful practice of law when providing real estate title and closing services to the plaintiff and similarly situated persons, engaged in unfair, deceptive and fraudulent conduct in violation of *W.Va. Code*, 46A–1–101 *et. seq.*, the West Virginia Consumer Credit and Protection Act, including but not limited to: passing off services as those of another; causing the likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services; causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by another; representing that services have the sponsorship, approval, characteristics, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status affiliation, or connection that he does not have; representing that services are of a particular standard of quality, if they are of another; and/or engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding; and that

(3) the defendants, by engaging in the unauthorized and unlawful practice of law when providing real estate title and closing services to the plaintiff and similarly situated persons, employed fraud, false pretense, false promises, deception and/or misrepresentation or the concealment, suppression or omission of material facts relating to their services with the intent that the plaintiff and similarly situated persons relied upon such concealment, suppression or omission to their detriment; and that

(4) the defendants, by engaging in the unauthorized and unlawful practice of law when providing real estate title and closing services to the plaintiff and similarly situated

1. The proposed class is defined by the plaintiff below as others in West Virginia who have paid the defendants for title examination and closing services. The circuit court has not taken up or ruled upon any matters regarding class certification.

2. The interrelationship among the several named defendants below with respect to their involvement in the alleged conduct that gives rise to the issues involved in this opinion does not appear to

be material to our discussion. We shall in this opinion refer to "the defendants" and shall mean by that reference, following the circuit court's approach in its order, "one or more of the Defendants." We shall also use the terms "plaintiff" and "defendants" even though these parties are technically respectively petitioner and respondents in the instant certified question proceeding.

persons, violated several other West Virginia statutes.

The plaintiff, in her prayer for relief, seeks, *inter alia*, declarative relief that the defendants' conduct is the unauthorized and unlawful practice of law; restitution and disgorgement of moneys paid by the plaintiff and similarly situated persons; statutory, actual, and punitive damages and attorney fees; and equitable and contempt power orders from the court preventing the defendants from engaging in the unauthorized and unlawful practice of law when providing real estate title and closing services to the plaintiff and similarly situated persons.

After limited discovery, the plaintiff moved for partial summary judgment and certification of questions to this Court on the issue of whether the defendants' conduct as factually alleged by the plaintiff constituted the unauthorized and unlawful practice of law.

In response to this motion, it appears [3] that the defendants did not argue that there were material issues of disputed fact about their conduct, nor did they apparently argue that their conduct was not the unlawful and unauthorized practice of law.

Rather, the defendants' apparent sole argument against the plaintiff's motion for partial summary judgment was that even if the defendants' conduct *vis-a-vis* the plaintiff and similarly situated persons was factually as the plaintiff alleged—and even if this conduct was *arguendo* the unauthorized and unlawful practice of law—that nevertheless, the plaintiff simply had no standing to make a claim for relief based on the defendants' conduct being the unlawful and unauthorized practice of law.[4]

The circuit court granted the plaintiff's motion for certification of questions and partial summary judgment, and entered an order, with findings of fact and conclusions of law, that is too lengthy to reproduce here. The circuit court's order concluded:

> Upon said Findings of Fact and Conclusions of Law, it is hereby accordingly

ORDERED that Plaintiff's Motion for Partial Summary Judgment is hereby granted. It is further ORDERED, that pursuant to Rule 13 of the Rules of Appellate Procedure and West Virginia Code, 58–5–2, the following questions shall be certified to the West Virginia Supreme Court of Appeals:

(1) Is a lay person *not* under the direct supervision or control of an attorney licensed to practice law in the State of West Virginia engaged in the unlawful practice of law when performing a title examination, search, review or inspection of records, and providing any certificate, notes (handwritten or otherwise), abstract, summary, opinion, guarantee, verbal verification and/or report of any kind or nature as to the status or marketability of real estate title and/or reflecting matters of record? ANSWER: YES.

(2) Is a lay person *not* under the direct supervision or control of an attorney licensed to practice law in the State of West Virginia engaged in the unlawful practice of law by performing the function of the "closing agent" for mortgage financing or real estate transactions when part of his or her responsibilities as closing agent consist of: (1) explaining, interpreting, giving an opinion and/or advising another on the meaning of terms or principles (legal or otherwise) relevant to the mortgage transaction, or in matters involving the application of legal principles to particular facts, purposes or desires; (2) instructing clients in the manner in which to execute legal documents; and, (3) preparing the HUD–1 Settlement Statement, and at times, other instruments related to mortgage loans and transfers of real property? ANSWER: YES.

(3) Does the preparation of documents evidencing title insurance services [i.e., binders, commitments or policies (owners or lenders) ] constitute the preparation of "legal instruments of any character" and/or involve the application of legal principles to

---

**3.** The record transmitted to this Court was not complete, and although we have obtained additional documents from the circuit clerk, we cannot be sure that we have all of the materials that were before the circuit court.

**4.** This is also the position that the defendants have taken before this Court; we discuss it at III. *infra.*

facts, purposes, and desires that, subject to the exception provided hereafter, can only be accomplished by attorneys licensed to practice in the State of West Virginia?

ANSWER: YES.

(A) Can a non-lawyer engage in title insurance services if he or she complies with the provisions of West Virginia Code, X33–1–10(f)(4) and UAL Opinion 01–02?

ANSWER: YES.

(4) Is a lay person *not* under the direct supervision or control of an attorney licensed to practice law in the State of West Virginia engaged in the unlawful practice of law by mailing or hand-carrying instruments to the courthouse after the real estate closing for recording when the recordation of instruments takes place as a part of a real estate transfer?

ANSWER: YES.

(5) Does a non-lawyer plaintiff have standing to bring a cause of action alleging the unlawful practice of law in the State of West Virginia?

ANSWER: YES.

(6) Do the Sherman Antitrust Act or the Interstate Commerce Clause preclude this court from exercising jurisdiction in this matter?

ANSWER: NO.

(Emphasis in original in all questions.)

## II.

### Standard of Review

■ We review a circuit court's answers to certified questions and summary judgment rulings *de novo*. *See Charter Communications VI, PLLC v. Community Antenna Service, Inc.*, 211 W.Va. 71, 561 S.E.2d 793 (2002).

## III.

### Discussion

#### A.

Our research indicates that in cases from a number of jurisdictions, courts have recognized the right of plaintiffs to predicate claims for damages and other relief upon allegations of the unauthorized practice of law by a defendant. *See, e.g., Armstrong v. Brown Service Funeral Home West Chapel,* 700 So.2d 1379 (Ala.Civ.App.1997) (claims for damages and class action relief for unauthorized practice held cognizable); *American Abstract and Title Co. v. Rice,* —— S.W.3d ——, 2004 WL 1354273 (Ark. June 17, 2004) (unfair trade practices and class action claims cognizable, existence of State Bar Committee on unauthorized practice did not oust trial court of jurisdiction); *accord, Speights v. Stewart Title Guaranty Co.,* —— S.W.3d ——, 2004 WL 1354279 (Ark. June 17, 2004); *Herman v. Prudence Mutual Casualty Company,* 41 Ill.2d 468, 244 N.E.2d 809 (1969) (plaintiff could seek injunctive relief against unauthorized practice); *Kim v. Desert Document Services,* 101 Wash.App. 1043, 2000 WL 987005 (Div. 1 2000) (unpublished) (plaintiffs could bring private action asserting unauthorized practice of law), *review denied,* 142 Wash.2d 1026, 21 P.3d 1149 (Wash.2001); *J.H. Marshall & Associates v. Burleson,* 313 A.2d 587 (D.C.1973) (individual plaintiff had standing to seek injunction against unauthorized practice of law); *Dressel v. Ameribank,* 468 Mich. 557, 664 N.W.2d 151 (2003) (plaintiffs asserted class action claim for unauthorized practice); *accord, Perkins v. CTX Mortgage Co.,* 137 Wash.2d 93, 969 P.2d 93 (1999); *but compare Reliable Collection Agency, Ltd. v. Cole,* 59 Haw. 503, 584 P.2d 107 (1978) (statute prohibiting unauthorized practice of law did not confer standing).

This Court has authorized a plaintiff's bringing a claim for damages based in part on an allegation of the unauthorized practice of law, *see Brammer v. Taylor,* 175 W.Va. 728, 338 S.E.2d 207 (1985) (unauthorized practice of law would be *prima facie* negligence in the preparation of legal documents).

■ The instant case is not a case where a stranger to the defendants, with no connection to the defendants' conduct in question, finds fault with the defendants' conduct and seeks to have it enjoined. In the instant case, the plaintiff paid money to the defendants for certain services that she alleges she expected to be done under the supervision of a properly licensed legal professional. She alleges that she wanted, expected, and had a right to have her "legal work" done by a

lawyer—and that by taking her money to do that work, but not having the work done by a lawyer, the defendants misled the plaintiff and wrongfully took her money. She wants restitution for herself and similarly situated people, and court action prohibiting the defendants from continuing their conduct.

The right of plaintiffs to bring similar claims has been upheld in the foregoing-cited cases. (We emphasize that we are not addressing whether the plaintiff can prove her case—the issue is solely whether she has standing to bring a claim.) The defendants' argument that the circuit court has no right to address the issue of whether the defendants engaged in the unauthorized practice of law *vis-a-vis* the plaintiff and similarly situated persons is not persuasive.

█ Based on the foregoing, we hold that a party who has suffered or may likely suffer a legally cognizable injury, wrong, or other actionable violation of his or her personal legal rights and interests as a proximate result of the unlawful and unauthorized practice of law by another has standing to assert a claim alleging such actual or threatened unlawful and unauthorized practice and seeking relief appropriate to the injury, wrong, or violation.

Accordingly, the circuit court correctly answered certified question number five:

(5) Does a non-lawyer plaintiff have standing to bring a cause of action alleging the unlawful practice of law in the State of West Virginia?

ANSWER: YES.

#### B.

We turn next to the circuit court's Answers to the remaining certified questions, and here we embark on more difficult territory.

█ We begin our discussion by observing that in West Virginia, the judicial branch determines what is and is not the unauthorized practice of law. *See Daily Gazette Co. v. Comm. on Legal Ethics,* 174 W.Va. 359, 326 S.E.2d 705 (1984). *See also Allstate Insurance Company v. The West Virginia State Bar,* 998 F.Supp. 690 (S.D.W.Va.1998),

*aff'd,* 233 F.3d 813 (4th Cir.2000). This includes the authority to define, sanction, enjoin, and otherwise address the unauthorized practice of law. *West Virginia State Bar v. Earley,* 144 W.Va. 504, 109 S.E.2d 420 (1959). Moreover,

[i]t cannot be questioned that the Legislature cannot restrict or impair the power of the judiciary to regulate the practice of law by enacting a statute permitting or authorizing laymen to practice law. Where, however, the intrusion upon the judicial power is minimal and inoffensive, and is consistent with and intended to be in aid of the aims of the Court with respect to the regulation of the practice of law, such legislation may be upheld as being in aid of the judicial power.

*State ex rel. Frieson v. Isner,* 168 W.Va. 758, 777, 285 S.E.2d 641, 654 (1981) (citations omitted).

Thus, this Court, when the question is properly presented, must decide what conduct constitutes the practice of law—and when such conduct must be performed by or under the supervision of a licensed West Virginia attorney.

We are cautioned by several concerned *amici* that in addressing the circuit court's Answers to the certified questions, we run a serious risk of inadvertently disturbing and disrupting time-tested procedures and principles of real estate and loan practice that are important to the protection of liberty and property in this State.

Specifically, the *amici curiae* West Virginia Association of Community Bankers, Inc. and West Virginia Bankers Association caution that simple affirmance of some of the language in the circuit court's Answers to Questions 1–4 and 6 "could disrupt a well-established, economically efficient and highly standardized real estate lending process . . . ."

These *amici* suggest that the Answers could be read to mandate the altering of common practices of West Virginia depository financial institutions—such as using lay employees of the institution, not directly supervised by a licensed attorney, to perform ministerial acts in connection with real es-

tate-based loan transactions, using documents already reviewed by the institution's counsel—and that such alteration would be contrary to the proper duty of this Court in regulating the practice of law for the benefit of the public, which includes keeping loan charges at a reasonable price consistent with public safety.

Another *amicus curiae*, Mountain State Justice, Inc., a legal advocate for lower-income consumers, raises another important word of caution. This *amicus* warns us against any inadvertent relaxation or loosened interpretation of unauthorized practice standards that could reduce the legal protection given to West Virginians who are confronted with the problem of finance companies and loan brokers that are arguably engaged in "predatory lending."

This *amicus* suggests that this Court's regulation of the practice of law must ensure that nondepository financial institutions and finance companies conduct their loan closings under the supervision of a licensed West Virginia attorney—to ensure that the closing documents comport with West Virginia law; that borrowers are aware of the essential loan terms and that required disclosures are timely and accurate; and that borrowers understand the potential consequences of the transaction and can ask questions.

Without engaging in an extended discussion of the issues and concerns presented by these *amici*, we express our recognition of the importance of these issues and concerns—and our resolution of the instant case, as will be seen, is informed by this recognition.

We also have the benefit of *amicus curiae* briefs of the Federal Trade Commission and the West Virginia State Bar. These two *amici* have their own views of the issues presented by the circuit court's Answers, and both cite cases from other jurisdictions as supportive of their positions. Many of these cases are collected at the *Annotation*, "Unauthorized Practice of Law—Real Estate Closings," 119 A.L.R. 5th 191.[5]

One thing these cases make clear is that in determining what is and is not the unauthorized and unlawful practice of law, there should be an adequate factual record upon which a court may properly weigh such considerations as accountability, due care and consistency in the application of legal principles, public safety, etc. *Id. See also* Quintin Johnstone, "Unauthorized Practice of Law and the Power of State Courts: Difficult Problems and their Resolution," 39 Willamette L. Rev. 795 (2003).

We do not have such a record in the instant case; and notably, none of the *amici*, who raise many of these important considerations, participated in the proceedings below.

Syllabus Point 5 of *Bass v. Coltelli*, 192 W.Va. 516, 453 S.E.2d 350 (1994) states:

> *West Virginia Code*, 58–5–2 (1967), allows for certification of a question arising from a denial of a motion for summary judgment. *However, such certification will not be accepted unless there is a sufficiently precise and undisputed factual record on which the legal issues can be determined.* Moreover, such legal issues must substantially control the case.

(Emphasis added.)

Applying this standard to the record before us, we clearly do not have a sufficiently precise and undisputed factual record on which the legal issues can be determined. Consequently, we rule as follows:

1. We affirm the circuit court's Answer to certified question number 5.

2. We void the circuit court's Answers to the remaining questions, numbers 1–4 and 6. We neither agree nor disagree with those Answers. We simply hold that there is an insufficient record upon which this Court can address them. The grant of partial summary judgment on the basis of the circuit court's Answers to questions 1–4 and 6 is reversed, without prejudice to the renewal of a motion for summary judgment upon a proper record.

---

**5.** In light of our disposition of the instant case, these cases need not be individually listed or discussed here.

3. The circuit court may allow other stakeholders to intervene, if appropriate, to assert their interests. The role of such intervenors may be regulated by the trial court as necessary for case management. The lodestar for such case management determinations should be the development of a record that will allow the trial court—and if necessary this Court—to fully and fairly weigh the considerations necessarily raised by the instant case.

4. Nothing in this opinion is intended to alter the long-established and necessary role of licensed West Virginia attorneys in preparing legal documents, in examining and certifying real estate titles, and in assuring that real estate and loan transactions are conducted in accord with the law.

Certified Questions Answered and Addressed, and Remanded.