132 P.3d 1213

WHITEY'S BOAT CRUISES, INC.; Robert F. Butler, Jr., dba Captain Sundown Enterprises; and Ralph Young, dba Hanalei Sport Fishing & Tours, Plaintiffs–Appellants,

v.

NAPALI–KAUAI BOAT CHARTERS, INC., dba Hanalei Sea Tours; Joe Paskal; Clancy Greef, dba Capt. Zodiac Raft Expeditions–Napali Zodiac; Catamaran Kahanu, a Hawaii Limited Partnership; William T.K. Swain; Byron Fears, Dave Lambdin; Jusdoit, Inc.; Resort Marketing International–Hawaii, Inc., aka Embassy Vacation Resort; G.F. Hutton Properties, dba Cliffs Resort Activities; CAP Management Corp., dba The Cliffs Clubs Activities; Hawaii Calls Activities, Inc., Charles Clipner; Swain Limited Partnership, dba Hawaiian Style Tours and Activities; Hyatt Corporation; KVRA Activities, Inc.; Kauai Sands, Inc. Shell Development Corp.-Lawai, dba Lawai Beach Resort; AOAO of Lawai Beach Resort; Pahio Vacation Ownership, Inc.; David E. Walter; Pleasant Travel Service, Inc., dba Pleasant Hawaiian Holidays; H & S Publishing, a Hawaii Partnership, dba Kauai Magazine; Drew R. Houghton; Hawaiian World Napali, Inc.; Marriott Hotel Services, Inc.; Hanalei Land Company, Ltd.; Michael Guard Sheehan, Jr.; Paradise Adventure Cruises, Inc.; MTI Vacations, Inc.; Napali Coast Tours, Inc.; R.A.T., Inc.; Na Pali Ocean Ventures, Inc.; Ramblin' Rose Charters, Inc.; Ancient Mariner, Inc.; American Express Travel Related Services Company, Inc.; Michael Guard Sheehan, Sr.,; Patricia Wilcox Sheehan, Hanalei River Enterprises, Inc.; Patricia Wilcox Sheehan Trust; and John Does 19–100, Defendants–Appellees.

No. 26334.

Supreme Court of Hawai'i.

April 18, 2006.

As Corrected April 25, 2006.

James J. Bickerton and Scott K. Saiki (of Bickerton Saunders Dang & Sullivan), on the briefs, Honolulu, for plaintiffs-appellants.

Jeffrey S. Portnoy and T. Paul Sasaki (of Cades Schutte LLP), on the briefs, Honolulu, for defendants-appellees Napali Appellees.

John T. Komeiji, R. Scott Simon, and Karen Y. Arikawa (of Watanabe Ing Kawashima & Komeiji LLP), on the briefs, Honolulu, for Sheehan Appellees.

Michael Jay Green, on the briefs, for defendant-appellee Clarence H. Greff dba Capt. Zodiac.

1. The Honorable George M. Masuoka presided over the underlying proceedings.

2. At all times relevant to the instant case, Paskal was the owner, president, and operator of Napali–Kauai Boat Charters, Inc. and its subsidiaries, *i.e.*, Napali Coast Tours, Inc., R.A.T., Inc., Napali Ocean Ventures, Inc., Ramblin' Rose Charters, Inc., and Ancient Mariner, Inc. The foregoing

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by MOON, C.J.

The instant case involves an ongoing dispute among commercial tour boat operators and tour boat promoters in the area of Hanalei and the neighboring Na Pali coast of the island of Kaua'i, Hawai'i. Plaintiffs-appellants Whitey's Boat Cruises, Inc., Robert F. Butler, Jr. dba Captain Sundown Enterprises, and Ralph Young dba Hanalei Sport Fishing & Tours [hereinafter, collectively, Appellants] are commercial tour boat operators who filed a complaint against a number of other tour boat operators and promoters, asserting claims of, *inter alia*, common law unfair competition, tortious interference with prospective business advantage, and unjust enrichment. Essentially, Appellants claim that certain tour boat operators conducted tours in the area of Hanalei and along the Na Pali coast without the requisite county and state permits, in violation of county and state rules and regulations, to the financial detriment of Appellants.

Appellants appeal from the Circuit Court of the Fifth Circuit's December 17, 2003 judgment[1] entered pursuant to orders granting summary judgment in favor of, *inter alia*, defendants-appellees (1) Napali Kauai Boat Charters, Inc., Napali Coast Tours, Inc., R.A.T., Inc., Napali Ocean Ventures, Inc., Ramblin' Rose Charters, Inc., Ancient Mariner, Inc., and Joe Paskal[2] [hereinafter, collectively, Napali Appellees] and (2) Michael G. Sheehan, Sr. (Sheehan, Sr.) and Hanalei River Enterprises, Inc. [hereinafter, collectively, Sheehan Appellees].[3] On appeal, Appellants claim that the circuit court erred in granting summary judgment in favor of Napali Appellees and Sheehan Appellees. Specifically, Appellants contend that the circuit court erred in dismissing their claims of common law unfair competition, tortious interfer-

companies were all businesses conducting tour boat operations.

3. As discussed more fully *infra*, Sheehan Appellees operated a boatyard in Hanalei that allegedly served as a base of operations for tour boat operators to conduct tours without the requisite permits. Appellants characterize Sheehan Appellees as "promoters."

ence with prospective business advantage, and unjust enrichment.

For the reasons discussed more fully *infra*, we hold that Appellants are precluded from asserting a private right of action for damages pursuant to the county and state regulations at issue in the instant case. Accordingly, we affirm the circuit court's December 17, 2003 judgment.

## I. BACKGROUND

### A. Factual Background

On November 29, 1975, the County of Kaua'i (the County) approved a special management area (SMA) in Hanalei, located on the north shore of Kaua'i, to protect a substantial portion of the Hanalei River, the river mouth, and surrounding lands. The County then issued SMA Minor Permit SMA (M)–87–27 · to the State of Hawai'i (State) Department of Transportation (DOT). SMA Minor Permit SMA (M)–87–27 (the DOT Permit) was in effect from 1976 through 1988. The DOT Permit authorized the DOT to issue permits to commercial tour boat operators to conduct their tour activities within the Hanalei SMA during the effective life of the DOT Permit.

The DOT Permit expired on September 30, 1988, and the County apparently did not extend or renew the DOT Permit. Instead, the County decided to establish a permitting process to directly regulate commercial tour boat operations in the Hanalei SMA. During the time that the County was formulating and drafting its permitting procedures (*i.e.*, between 1988 and 1993), tour boat operators were not allowed to conduct their tour activities in the Hanalei SMA. Tour boat operators were also not allowed to conduct their tours in the Hanalei SMA during the pendency of their permit applications with the County.

In 1988, the County sought injunctive relief against Napali Appellees and other tour boat operators for allegedly failing to comply with the County's prohibition against conducting commercial tours. The circuit court issued a preliminary injunction on April 5, 1988. According to Napali Appellees, no permanent injunction has ever been issued, and the County's action is still pending.

In 1992, the County enacted section 19 of the County's SMA Rules and Regulations, also known as the Hanalei Estuary Management Plan (HEMP), setting forth the procedures to be followed in processing SMA permit applications for commercial boating within the Hanalei Estuary.[4] Pursuant to HEMP, the County issued a limited number of permits (SMA permits) to Appellants and other tour boat operators in 1993.[5]

In addition to HEMP, the commercial tour boat industry on the north shore of Kaua'i is also regulated by Hawai'i Administrative Rules (HAR) chapter 256, entitled "Ocean Recreation Management Rules and Areas" (ORMRA). The specific purpose of ORMRA "is to reduce conflicts among ocean water users, especially in areas of high activity." HAR § 13–256–1(a).

Commercial tour boat operators conducting tours off the adjoining Na Pali coast were required to have state commercial boating licenses (state permits) issued by the State Department of Land and Natural Resources (DLNR). The commercial tour boat operators, therefore, were required to have SMA permits and state permits in order to conduct tours in the Hanalei SMA and along the Na Pali coast. According to Appellants, the SMA permits set forth limitations on the number of tours (generally, no more than two trips per day), the number of passengers (generally, no more than fifteen persons per trip), the days of operation (daily, except Sundays and county holidays), and the hours of operation (generally, departures no earlier than 7:00 a.m. and arrivals no later than 7:30 p.m.).

As previously stated, Appellants have the requisite SMA permits and, thus, are legally

---

4. Section 19.2 of HEMP defines "Hanalei Estuary" as "those lands and waters that constitute the Hanalei River and any lands within two hundred (200) feet of its banks that fall within the County of Kaua'i [SMA]."

5. In addition to Appellants, Hanalei Sailing School, Bluewater Sailing, Kauai/Na Pali Outfitters, and Luana of Hawai'i were also granted SMA permits in 1993 to operate in the Hanalei SMA. These companies are not parties to the instant action.

entitled to operate tour boats in the Hanalei SMA. Appellants claim that Napali Appellees and other tour boat operators, however, conducted tours in the Hanalei SMA and along the Na Pali coast without the required SMA permit and the state permit. Specifically, Appellants allege that, when the County prohibited tour boat operators from conducting tour activities in the Hanalei SMA between 1988 and 1993, certain tour boat operators, as later named in Appellants' first amended complaint, continued to do so. Consequently, Appellants claim that these tour boat operators "gained substantial income and name recognition in the business, ... establish[ed] and capitalize[d] on economies of scale in light of the lack of competition, and made lasting business relations with the various companies engaged in tour boat promotions[.]" Once Appellants received their SMA permits in 1993, they allege that they "substantially complied" with the limitations in the SMA permits. Appellants maintain that, inasmuch as other tour boat operators continued to engage in tours without the SMA permit, these tour boat operators were not constrained by the limitations in the SMA permit. Thus, Appellants claim that "unpermitted" tour boat operators made unlimited trips, carried unlimited passengers, and were unrestricted with respect to the time of day or the days of operation (*i.e.*, disregarding the Sunday and holiday prohibition). As such, Appellants allege that these tour boat operators "gained significant and

unfair competition advantages over [Appellants,] who were acting legally and pursuant to their Hanalei SMA permits...."

Moreover, Appellants claim that certain tour boat promoters, as later named in their first amended complaint, "provided material assistance" to these illegally operating tour boat operators by promoting, advertising, and referring activities on behalf of these operators. Furthermore, Appellants allege that these tour boat promoters failed to promote their legitimate tour boat activities on the same level as the illegally operating tour boat operations.

## B. *Procedural History*

### 1. The Original Complaint

On May 8, 1997, Appellants filed a complaint against Napali–Kauai Boat Charters, Inc., Paskal, other tour boat operators,[6] and numerous tour boat promoters.[7] Therein, Appellants alleged the following claims against the tour boat operators: (1) violation of HRS § 480–2 (1993)[8] (relating to unfair methods of competition); (2) common law unfair competition; and (3) unjust enrichment/accounting. Appellants alleged the following claims against the tour boat promoters: (1) aiding and abetting (a) violation of HRS § 480–2 and (b) common law unfair methods of competition; and (2) conspiracy. Finally, Appellants requested injunctive relief against both sets of defendants. Specifically, Appellants claimed that they were

**6.** Appellants' complaint also named the following tour boat operators as defendants: (1) Clancy Greff dba Capt. Zodiac Raft Expeditions–Napali Zodiac (Capt. Zodiac); (2) Catamaran Kahanu; (3) William T.K. Swain (owner and operator of Catamaran Kahanu); (4) Byron Fears dba Paradise Adventure and Cruises; and (5) Dave Lambdin dba Jurassic Island Voyagers.

**7.** Specifically, Appellants' complaint named the following tour boat promoters as defendants: (1) Byron Fears dba Byron Fears Activity Desk & Tour Boats; (2) Activities Unlimited, Inc.; (3) Gervis W. Lovell (owner and operator of Activities Unlimited, Inc.); (4) Activity Pipeline, Inc.; (5) Jamie V. Montegna (co-owner and co-operator of Activity Pipeline, Inc.); (6) Danny D. Perez (co-owner and co-operator of Activity Pipeline, Inc.); (7) Jusdoit, Inc. dba Activity Warehouse; (8) Resort Marketing International–Hawai'i, Inc. aka Embassy Vacation Resort; (9) G.F. Hutton Properties dba Cliffs Resort Activities; (10) CAP

Management Corp. dba The Cliffs Clubs Activities; (11) Hawai'i Calls Activities, Inc.; (12) Charles Clipner (owner and operator of Hawai'i Calls Activities, Inc.); (13) Hawai'i Visitors and Convention Bureau (HVCB); (14) Swain Limited Partnership dba Hawaiian Style Tours and Activities; (15) Hyatt Corporation dba Hyatt Hotels Hawai'i; (16) KVRA, Inc. aka Kauai Vacation & Recreation Activities, Inc.; (17) Kauai Sands, Inc.; (18) Kikiaola Land Company, Ltd.; (19) Shell Development Corp.-Lawai dba Lawai Beach Resort; (20) AOAO of Lawai Beach Resort; (21) Pahio Vacation Ownership, Inc.; (22) David E. Walter (owner and operator of Pahio Vacation Ownership, Inc.); (23) Pleasant Travel Service, Inc. dba Pleasant Hawaiian Holidays; and (24) H & S Publishing dba Kauai Magazine.

**8.** HRS § 480–2(a) states that "[u]nfair methods of competition and unlawful or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

"entitled to an injunction prohibiting all commercial boat tour operations operating in and out of the Hanalei SMA without a Hanalei SMA [p]ermit." In addition, Appellants alleged that they were entitled to an order enjoining the tour boat promoters' conduct of promoting the tour boat operators' illegal activities. Appellants also claimed that they were entitled to an order enjoining the tour boat promoters' refusal to promote their legally operating tour boats.

## 2. The First Amended Complaint

On March 30, 1998, Appellants filed an *ex parte* motion to certify fourteen additional individuals and/or companies as defendants.[9] On November 20, 1998, Appellants moved to file a first amended complaint. Therein, Appellants sought to amend the complaint "to make technical changes, to modify the legal theories asserted, to join claims and parties[,] and to add certain factual allegations against [the d]efendants." One of the technical changes proposed by Appellants was to delete the parties that had been properly dismissed to date from the instant action.[10] In addition, Appellants sought to add the following parties as defendants: (1) Sheehan, Sr.; (2) Patricia Wilcox Sheehan; (3) Patricia Wilcox Sheehan Trust; and (4) Hanalei River Enterprises, Inc. [hereinafter, collectively, Sheehan, Sr. defendants]. Appellants alleged that Sheehan, Sr. defendants, Sheehan, Jr., and Hanalei Land Company, Ltd. (characterizing them as "tour boat promoters") acted in violation of an SMA permit held by Sheehan, Sr. and Patricia Wilcox Sheehan by

allowing tour boat operators, without the requisite permits, to use their boatyard to conduct commercial activity. *See supra* note 3. Specifically, Appellants alleged that Sheehan, Sr. "allowed non-permitted boat tour operators to launch their vessels from his boatyard and provided parking facilities for their customers." Finally, Appellants sought to add a claim for violation of HRS § 480-2 as against tour boat promoters. On February 3, 1999, the circuit court entered an order granting Appellants' motion for leave to file a first amended complaint, and, consequently, on the same day, Appellants filed the first amended complaint.

## 3. Dismissal of Claims Based on HRS § 480-2 and the Second Amended Complaint

On September 13, 1999, Swain, Catamaran Kahanu, and Swain Limited Partnership dba Hawaiian Style Tours and Activities [hereinafter, collectively, Swain defendants], who are tour boat operators and promoters, moved for partial summary judgment on Appellants' claims based on HRS § 480-2 (relating to unfair methods of competition). Therein, Swain defendants argued that Appellants lacked standing to bring the instant action inasmuch as this court's recent decision in *Robert's Hawai'i School Bus, Inc. v. Laupahoehoe Transportation Co.*, 91 Hawai'i 224, 982 P.2d 853 (1999), held that there is no private claim for relief under HRS § 480-13 (1993)[11] for unfair methods of competition in violation of HRS § 480-2.

---

9. Specifically, these additional defendants were: (1) Drew R. Houghton; (2) Hawaiian World Napali Inc.; (3) Marriott Hotel Services, Inc.; (4) South Seas Tours Corporation; (5) Hanalei Land Company, Ltd.; (6) Michael G. Sheehan, Jr. (Sheehan, Jr.); (7) Paradise Adventure Cruises, Inc.; (8) MTI Vacations, Inc.; (9) Napali Coast Tours, Inc.; (10) R.A.T., Inc.; (11) Napali Ocean Ventures, Inc.; (12) Ramblin' Rose Charters, Inc.; (13) Ancient Mariner, Inc.; and (14) American Express Travel Related Services Company, Inc.

10. The parties dismissed were: (1) Activities Pipeline, Inc.; (2) Montegna; (3) Perez; (4) Lovell; (5) HVCB; (6) Kikiaola Land Company, Ltd.; and (7) Activities Unlimited, Inc. South Seas Tours Corporation was also dismissed; however, it had been identified as a "doe" defen-

dant and, therefore, was not named in the original complaint.

11. HRS § 480-13 states in relevant part:

(b) Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2:

(1) May sue for damages sustained by the consumer, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorneys fees together with the costs of suit; and

(2) May bring proceedings to enjoin the unlawful practices, and if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorneys fees together with the cost of suit.

On September 20, 1999, Appellants moved to file a second amended complaint. Therein, Appellants sought to amend the first amended complaint "to delete those parties that have been dismissed,[12] to modify the legal theories asserted[,] ... to delete three claims of relief[,] and to join two claims of relief against [d]efendants." Appellants sought to delete the following three claims: (1) violation of HRS § 480–2 against tour boat operators; (2) violation of HRS § 480–2 against tour boat promoters; and (3) aiding and abetting violation of HRS § 480–2 against tour boat promoters. Appellants proposed to delete the foregoing three claims in light of this court's holding in *Robert's Hawai'i*, as articulated in Swain defendants' motion for partial summary judgment. In addition, Appellants requested that they be allowed to add two claims and to modify two existing claims. Specifically, Appellants proposed to add the following two claims: (1) common law unfair competition and aiding and abetting common law unfair competition against tour boat promoters;[13] and (2) interference with prospective business advantage against all defendants. Appellants sought to modify their claims of conspiracy and injunction in order to delete any reference to HRS chapter 480 and to add references to common law unfair competition and tortious interference with prospective business advantage.

On September 30, 1999, Sheehan, Jr. and Hanalei Land Company, Ltd. moved for partial summary judgment on Appellants' three claims based on HRS § 480–2 in their first amended complaint. Therein, Sheehan, Jr. and Hanalei Land Company, Ltd. reiterated Swain defendants' arguments that, pursuant to *Robert's Hawai'i*, Appellants could not pursue claims for relief under HRS § 480–13 for unfair methods of competition in violation of HRS § 480–2.

On November 8, 1999, the circuit court entered an order granting Sheehan, Jr. and Hanalei Land Company, Ltd.'s motion for partial summary judgment. Therein, the following three claims asserted by Appellants in their first amended complaint were dismissed: (1) violation of HRS § 480–2 against tour boat operators; (2) violation of HRS § 480–2 against tour boat promoters; and (3) aiding and abetting (a) violation of HRS § 480–2 and (b) unfair methods of competition against tour boat promoters.[14] The order also granted Swain defendants' motion for partial summary judgment "to the extent that such motion is consistent with [Sheehan, Jr. and Hanalei Land Company, Ltd.'s] [m]otion for [p]artial [s]ummary [j]udgment[.]"

On November 12, 1999, the circuit court entered an order granting in part and denying in part Appellants' motion for leave to file a second amended complaint. Therein, the circuit court denied Appellants' request to delete their three claims arising under HRS § 480–2 inasmuch as those claims were the subject of the November 8, 1999 order granting Swain defendants' motion for partial summary judgment. The circuit court granted Appellants' request in all other respects.

On November 12, 1999, Appellants filed their second amended complaint. The following table lists the six claims asserted in Appellants' second amended complaint:

| CLAIM | AGAINST |
| --- | --- |

**12.** The additional parties dismissed were: (1) Hawaii Calls Activities, Inc.; (2) Clipner; (3) Kauai Sands, Inc.; (4) AOAO of Lawai Beach Resort; (5) Pahio Vacation Ownership, Inc.; (6) Walter; and (7) H & S Publishing dba Kauai Magazine.

**13.** It is unclear why Appellants proposed to add a claim for aiding and abetting common law unfair competition against tour boat promoters inasmuch as it appears that such a claim was already asserted in Appellants' original complaint.

**14.** It is unclear why the circuit court dismissed Appellants' claim of aiding and abetting unfair competition inasmuch as this claim did not arise under HRS § 480–2 but rather appeared to be based on common law unfair competition.

We note that, in 2002, the legislature passed Senate Bill 1320, which was signed into law as Act 229, amending HRS § 480–2 by adding subsection (e), which provides: "Any person may bring an action based on unfair methods of competition declared unlawful by this section." Act 229, § 6 stated that the Act "shall take effect upon approval." Act 229 was approved on June 28, 2002. 2002 Haw. Sess. L. Act 229 at 918.

| Count I | common law unfair competition | tour boat operators |
|---|---|---|
| Count II | aiding and abetting common law unfair competition | tour boat promoters |
| Count III | interference with prospective business advantage | tour boat operators and promoters |
| Count IV | conspiracy (with respect to (1) common law unfair competition and (2) interference with prospective business advantage) | tour boat operators and promoters |
| Count V | unjust enrichment / accounting | tour boat operators |
| Count VI | injunctive relief | tour boat operators and promoters |

With respect to their common law unfair competition claim (Count I), Appellants alleged in their second amended complaint:

Defendant[s', *i.e.*, tour boat operators'] conduct as alleged herein, including but not limited to, their conduct of commercial boat tour operations in and out of the Hanalei SMA without a Hanalei SMA [p]ermit from and after September 30, 1988 and/or for conduct of tour boat activities within Na Pali coast ocean waters not in compliance with applicable state law or state permit requirements constitutes common law unfair competition.

With respect to their interference with prospective business advantage claim (Count III), Appellants alleged:

Defendant[s', *i.e.*, tour boat operators'] conduct as alleged herein, including but not limited to, their conduct of commercial boat tour operations in and out of the Hanalei SMA without a Hanalei SMA [p]ermit from and after September 30, 1988 and/or for conduct of tour boat activities within Na Pali [c]oast ocean waters not in compliance with applicable state law or state permit requirements constitutes tortious interference with prospective business advantage.

. . . .

Defendant[s', *i.e.*, tour boat promoters'] conduct of referring passengers and providing material assistance to [d]efendant[s, *i.e.*, "unpermitted" tour boat operators] who were engaged in common law unfair competition through their promotion, advertising and referral activities on behalf of [d]efendant ["unpermitted" tour boat operators], and/or through allowing their property to be used for such purposes constitutes tortious interference with prospective business advantage.

Defendant[s', *i.e.*, tour boat promoters'] further conduct of failing or refusing to promote the permitted tour activities of [Appellants] on par with their promotions of [d]efendant [u]npermitted [b]oat [t]our [o]perators and/or failing or refusing to inform customers that certain boat tour operators were unpermitted and the existence of permitted tour boats constitutes tortious interference with prospective business advantage.

Defendants [Sheehan, Sr. defendants, Sheehan, Jr., and Hanalei Land Company, Ltd.] have acted in violation of Sheehan, Sr. and Patricia Sheehan's SMA permit and/or without required permits and/or otherwise in violation of applicable law to [Appellants'] economic detriment by allowing unpermitted boat tour operators to use its facility to conduct commercial activity without the required Hanalei SMA permits and/or state permits and/or otherwise not in compliance with applicable law and court orders and have therefore tortiously interfered with [Appellants'] prospective business advantage.

And, with respect to their unjust enrichment/accounting claim against the tour boat operators (Count V), Appellants alleged:

As a result of the conduct as alleged herein, [d]efendants [tour boat operators] have been unjustly enriched. Defendant Unpermitted Boat Tour Operators have been enriched for deliberately failing and refusing to conduct their activities in accord with the SMA Rules and Regulations and/or other applicable state and county rules, regulations, ordinances, laws and

court orders while [Appellants] conducted their activities in compliance with said rules and regulations. The result has been that [Appellants] conferred a benefit upon the Unpermitted Boat Tour Operators by reducing the competition for tour boat operations in the Hanalei SMA and allowing [d]efendant Unpermitted Boat Tour Operators to continue in business.

### 4. Dismissal of Counts I Through IV of the Second Amended Complaint

On March 6, 2000, Napali Appellees moved for partial summary judgment with respect to Counts I (common law unfair competition), III (interference with prospective business advantage), and IV (conspiracy). Therein, Napali Appellees contended that, inasmuch as Appellants' purported business tort claims are wholly dependent on Napali Appellees' alleged violations of HEMP (the county rules and regulations relating to SMA permits) and ORMRA (the state rules and regulations relating to state permits), and neither HEMP nor ORMRA confers a private right of action on private parties, Appellants lack standing to enforce these regulations. As such, Napali Appellees argued that Appellants' claims of common law unfair competition and interference with prospective business advantage were not cognizable. Napali Appellees also contended that Appellants' conspiracy claim must fail as a matter of law because it was derivative of Appellants' underlying claims of common law unfair competition and interference with prospective business advantage.

On March 30, 2000, G.F. Hutton Properties dba Cliffs Resort Activities and CAP Management Corp. dba The Cliffs Clubs Activities [hereinafter, collectively, Cliffs defendants], who are, *inter alia*, tour boat pro-

moters, filed a joinder in Napali Appellees' motion for partial summary judgment. Cliffs defendants further moved that the circuit court summarily dismiss Counts II (aiding and abetting common law unfair competition) and VI (injunctive relief) as to them. Cliffs defendants contended that, inasmuch as Counts II and VI are "entirely derivative" of Count I (common law unfair competition) and Appellants lacked standing to sue Napali Appellees for common law unfair competition, Counts II and VI should be dismissed.

■ A hearing was held on April 13, 2000 with respect to Napali Appellees' motion for partial summary judgment. At the hearing, the circuit court orally ruled that Appellants' claims of common law unfair competition were dismissed inasmuch as HRS § 480-2 "is the exclusive remedy." [15] The circuit court took the Appellants' other claims raised in Napali Appellees' motion for partial summary judgment under advisement.

On May 23, 2000, the circuit court entered its written order granting in part and deferring in part Napali Appellees' motion for partial summary judgment. Therein, the circuit court dismissed Count I (common law unfair competition against tour boat operators) as to all defendants. The circuit court partially dismissed Count IV (conspiracy), dismissing Appellants' conspiracy to commit common law unfair competition claim. The circuit court deferred on ruling on Count III (interference with prospective business advantage) and ordered the parties to submit supplemental memoranda in support of their positions. Although not clear from the circuit court's order, it appeared that the circuit court would rule on Appellants' conspiracy to

---

**15.** We note that, on appeal, Appellants raise as error the circuit court's ruling that HRS § 480-2 "is the exclusive remedy." This court has previously ruled that, "where the circuit court's decision is correct, its conclusion will not be disturbed on the ground that it gave the wrong reason for its ruling." *Reyes v. Kuboyama*, 76 Hawai'i 137, 140, 870 P.2d 1281, 1284 (1994) (citations omitted). As such, "[t]his court may affirm a grant of summary judgment on any ground appearing in the record, even if the circuit court did not rely on it." *Id.* (citations omitted). Here, as discussed more fully *infra*,

although the circuit court's decision was correct, it gave the wrong reason for its ruling. Specifically, HRS § 480-2 does *not* provide a remedy for Appellants because, as *Robert's Hawai'i* held, there is no private claim for relief under HRS § 480-13 for unfair methods of competition in violation of HRS § 480-2. Moreover, we note that the common law tort of unfair competition was not "preempted" by HRS § 480-2 as suggested by the circuit court's ruling. *See Meridian Mortgage, Inc. v. First Hawaiian Bank*, 109 Hawai'i 35, 122 P.3d 1133 (App.), *cert. denied*, 109 Hawai'i 294, 125 P.3d 1059 (2005).

commit interference with prospective business advantage claim when it ruled on Appellants' interference with prospective business advantage claim.

On July 26, 2000, the circuit court entered a supplemental order, dismissing Count II (common law unfair competition against tour boat promoters) as to all defendants. On August 30, 2000, the circuit court entered an order granting Napali Appellees' motion for partial summary judgment with respect to Count III (interference with prospective business advantage) as to all defendants. The circuit court also dismissed the remainder of Count IV (conspiracy), dismissing Appellants' conspiracy to commit interference with prospective business advantage claim as to all defendants. In its August 30, 2000 order, the circuit court stated:

2. The [c]ourt finds that the test set forth by the United States Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) controls in this case, and that [Appellants] do not have a private right of action to bring tort claims based on alleged violations of permitting regulations and environmental statutes governing the Hanalei [SMA] and the Napali coastal region.

3. In applying the *Cort v. Ash* test to this case, the [c]ourt specifically finds as follows:

(i) The various permitting regulations and environmental statutes upon which [Appellants] base their tort claims were not enacted for the benefit of commercial boaters, but for the general public.

(ii) There is no indication of a legislative intent to create private remedies for [Appellants] within these regulations and statutes, because the primary concerns behind the enactment of these laws were public enjoyment of coastal regions and environmental protection.

(iii) Specifically, HRS § 205A–6[16] was enacted to provide the general public with a cause of action when the objectives, rules, and regulations governing [SMAs] are violated. In this regard, the Court finds as compelling the 1977 Senate Committee Report 779, relating to the purpose behind HRS [c]hapter 205A.

(iv) Allowing [Appellants] to pursue a claim of interference with prospective business advantage based on alleged violations of the objectives, rules, and regulations governing the Hanalei [SMA] would not advance the underlying purpose and legislative scheme of HRS [c]hapter 205A.

Consequently, Appellants' surviving claims were Counts V (unjust enrichment/accounting against tour boat operators) and VI (injunctive relief against tour boat operators and promoters).[17]

### 5. Dismissal of Counts V and VI of the Second Amended Complaint

On October 16, 2000, Cliffs defendants moved for partial summary judgment with respect to Count VI (injunctive relief). Therein, Cliffs defendants argued that Appellants' claim for injunctive relief was based on the defendants' alleged (1) unfair competition in violation of common law and (2) tortious interference with prospective business advantage. Inasmuch as the circuit court had earlier dismissed Appellants' claims of common law unfair competition and interference with prospective business advantage, Cliffs defendants maintained that Appellants were thus precluded from seeking injunctive relief.

On October 20, 2000, Swain defendants moved for partial summary judgment with respect to Counts V (unjust enrichment) and

16. HRS chapter 205A is the enabling statute of HEMP (the county rules and regulations relating to SMA permits).

17. In addition, the following defendants were dismissed prior to the circuit court's August 30, 2000 order granting partial summary judgment: (1) Hyatt Corporation dba Hyatt Hotels Hawai'i; (2) American Express Travel Related Services, Company, Inc.; (3) Resort Marketing International–Hawai'i, Inc. dba Embassy Vacation Resort; (4) Marriott Hotel Services, Inc.; (5) Lambdin; (6) Patricia Wilcox Sheehan; (7) Patricia Wilcox Sheehan Trust; (8) Sheehan, Jr.; and (9) Hanalei Land Company, Ltd. Furthermore, Appellants had filed a request to the clerk for entry of default with respect to Hawaiian World Napali, Inc., which was granted.

VI (injunctive relief). Therein, Swain defendants argued that unjust enrichment "is a remedy and not a cause of action or claim." Specifically, they contended that "a claim for an accounting and unjust enrichment is a claim for damages, not the basis or justification for the claim." Thus, Swain defendants maintained that, inasmuch as Appellants' claims of common law unfair competition and interference with prospective business advantage had been dismissed, "there can be no claims for a remedy of either injunctive relief or its further remedy of an accounting and/or unjust enrichment." Moreover, Swain defendants contended that, because they had ceased all operations and promotions of tour boats in Hanalei by 1998, Appellants' "prayer for injunctive relief had actually and effectively [been satisfied] in 1998."

A hearing was held on November 21, 2000 with respect to the separate motions for partial summary judgment filed by Cliffs defendants and Swain defendants. With respect to Appellants' claim for injunctive relief, the circuit court stated:

> [U]nder the law as the [c]ourt sees it, [Appellants] must show a clearly ascertainable right in order to have a standing to seek equitable—the equitable relief of injunction. [Appellants] must also show that their claim for injunctive relief does not depend on the existence of a private remedy.
>
> Under the circumstances, the [c]ourt does not feel that [Appellants] can do this. [Appellants'] main argument no matter what [Appellants] say[ ] is that [Appellants] got hurt because defendants violated [HRS c]hapter 205A and that defendants['] violations—the violations of the wrongful conduct regardless of what [Appellants] say[ ], [Appellants] cannot use [HRS c]hapter 205A as the basis for injunctive relief or equitable relief under the circumstances. They do not have a private right of action under [HRS c]hapter 205A.
>
> Under the circumstances, with reference to the injunction, the [c]ourt will grant the motion for partial summary judgment.

The circuit court took under advisement Appellants' remaining claim of unjust enrichment/accounting.

On December 7, 2000, the circuit court entered its written order granting Cliffs defendants' motion for partial summary judgment with respect to Count VI (injunctive relief), dismissing Appellants' claim for injunctive relief as to all defendants. On February 21, 2001, the circuit court entered an order granting Swain defendants' motion for partial summary judgment with respect to Count V (unjust enrichment/accounting), dismissing Appellants' claim for unjust enrichment/accounting as to all defendants. The circuit court further found "that the remedy of unjust enrichment is not practical and would not serve the public good."

### 6. Judgment and Appeal

On November 7, 2003, the parties filed a conditional stipulation of dismissal as to all claims by Appellants and all counterclaims by defendants.[18] The stipulation preserved Appellants' right to appeal from any final judgment entered by the circuit court with respect to their claims against (1) Napali Appellees, (2) Sheehan Appellees, and (3) Capt. Zodiac. As part of the stipulation, Appellants could challenge only the circuit court's orders granting summary judgment with respect to the six claims set forth in Appellants' second amended complaint.

On December 17, 2003, final judgment was entered in favor of, *inter alia*, Napali Appellees, Sheehan Appellees, and Capt. Zodiac. Appellants timely appealed on January 14, 2004.

## II. *STANDARD OF REVIEW*

### A. *Motion for Summary Judgment*

This court reviews the circuit court's grant of summary judgment *de novo*. *O'ahu Transit Servs., Inc. v. Northfield Ins. Co.*, 107 Hawai'i 231, 234, 112 P.3d 717, 720 (2005) (citing *Hawai'i Cmty. Fed. Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000)). The standard for granting a motion for summary judgment is well settled:

---

**18.** Clipner, Napali Appellees, Sheehan, Sr., and Capt. Zodiac had filed counterclaims against Appellants. As part of the stipulation, all counterclaims were dismissed.

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Price v. AIG Hawai'i Ins. Co.*, 107 Hawai'i 106, 110, 111 P.3d 1, 5 (2005) (citation omitted) (brackets in original).

B. *Statutory Interpretation*

■ Statutory interpretation is reviewed *de novo* by this court. *Blair v. Ing*, 95 Hawai'i 247, 253, 21 P.3d 452, 458 (2001) (citations omitted).

### III. *DISCUSSION*

■ As previously stated, Appellants challenge the circuit court's orders granting summary judgment in favor of Napali Appellees and Sheehan Appellees [19] with respect to their claims of common law unfair competition, tortious interference with prospective business advantage, and unjust enrichment. However, we note that Appellants' three claims are entirely dependent upon Napali Appellees' alleged violations of HEMP (the county rules and regulations relating to SMA permits) and ORMRA (the state rules and regulations relating to state permits). Specifically, all three claims for relief in the second amended complaint incorporate the central allegation that Napali Appellees operated their tour boat activities in violation of county permitting rules and regulations (*i.e.,* HEMP) and state permitting rules and regulations (*i.e.,* ORMRA). As such, we first address the threshold issue of whether HEMP and ORMRA afford a private right of action in the instant case.

Appellants contend that their claims for common law unfair competition and tortious interference with prospective business advantage "are properly based upon [Napali Appellees'] operation of non-permitted and illegal boat tours in the Hanalei SMA and along the Na Pali Coast to [Appellants'] financial detriment." Napali Appellees contend that "Appellants cannot assert tort claims based on alleged violations of a statute when the statute does not confer a private right of action upon them." Specifically, Napali Appellees argue that "Appellants lack standing to assert their business tort claims because: (1) Appellants' tort claims are wholly based on HEMP and ORMRA; (2) those regulations were not enacted to protect Appellants' business interests; and (3) those regulations do not provide Appellants with a private cause of action." Similarly, Sheehan Appellees contend that "[t]he statutory regulations in question, including the state's permitting requirements, were not established to create an exclusive right to operate tour boats nor to protect Appellants against competition, but[,] rather, to protect the environment and benefit the general public."

In *Reliable Collection Agency, Ltd. v. Cole*, 59 Haw. 503, 584 P.2d 107 (1978), this court stated:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose [e]special benefit the statute was enacted; ... that is, does the statute create a ... right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

---

19. In their opening brief, Appellants state that, "[f]or purposes of the instant appeal, the principal [d]efendants include (1) [Napali Appellees] and (2) [Sheehan Appellees]. Such statement is also consistent with Appellants' civil appeal docketing statement. However, presumably because Appellants preserved their right to appeal against Capt. Zodiac, on September 10, 2004, Capt. Zodiac filed a joinder in Sheehan Appellees' answering brief.

*Id.* at 507, 584 P.2d at 109 (quoting *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), *departed from by Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), and *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)) (ellipses and brackets in original) (internal quotation marks and emphasis omitted).[20]

Here, as previously mentioned, Appellants' claims are based on the allegations that Napali Appellees operated without the requisite SMA permit and state permit, as mandated by HEMP[21] and ORMRA,[22] respectively. A closer look at HEMP and ORMRA, however, reveals that both regulations were not promulgated with the objective of protecting business interests or competition but rather with the objective of protecting and preserving the environment for the general public, and, thus, it appears that no private right of action is created in favor of Appellants under the circumstances of this case.

### A. *HEMP*

As previously stated, the authority behind the promulgation of HEMP is HRS chapter 205A (referred to as the "Coastal Zone Management Act"). *See supra* note 17. HRS § 205A–27 (2001), entitled "Designation of special management area authority," provides that "[t]he [county planning commission] is designated the [SMA] authority and is authorized to carry out the objectives, policies and procedures of this part." The policy behind SMAs is stated in HRS § 205A–21 (2001), which provides:

> The legislature finds that, special controls on developments within an area along the shoreline are necessary to avoid permanent losses of valuable resources and the foreclosure of management options, and to ensure the adequate access, by dedication or other means, to public owned or used beaches, recreation areas, and natural preserves is provided. The legislature finds and declares that it is the state policy to preserve, protect, and where possible, to restore the natural resources of the coastal zone of Hawaiʻi.

Although section 19.1 of HEMP states that the purpose of its rules "is to set forth the procedures to be followed in processing [SMA] Use Permit applications for commercial boating within the Hanalei Estuary[,]" it is clear that HEMP, when placed in the context of the SMA Rules and Regulations of the County, of which HEMP is a part, was

---

**20.** The United States Court of Appeals for the Ninth Circuit has stated:

> Though the Supreme Court never indicated that the four *Cort* factors [discussed *infra*] carried different weight, subsequent decisions have emphasized that the key inquiry is whether Congress intended to provide the plaintiff with a private right of action. *See California v. Sierra Club,* 451 U.S. 287, 293, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981); *see also Burgert v. Lokelani Bernice Pauahi Bishop Trust,* 200 F.3d 661, 664 (9th Cir.2000). Indeed, there has even been some suggestion that *Cort* has been overruled. *Compare Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 61 L.Ed.2d 82, (1979) (stating that *Cort's* first three factors—the language and focus of the statute, its legislative history, and its purpose—are traditional considerations in determining congressional intent), *with Thompson v. Thompson,* 484 U.S. 174, 189, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) (Scalia, J., concurring) (suggesting that *Touche Ross* focuses attention on the second *Cort* factor, denominated "legislative intent," and subsumes the others). *Nevertheless, we still find the four-factor test helpful in determining whether a statute provides a private right of action.*

*First Pac. Bancorp, Inc. v. Helfer,* 224 F.3d 1117, 1121–22 (9th Cir.2000) (emphasis added). *Cort's* fourth factor provides that: "[I]s the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" 422 U.S. at 78, 95 S.Ct. 2080. Pursuant to *First Pac. Bancorp,* we apply *Cort's* first three factors in determining whether a statute provides a private right of action though understanding that legislative intent appears to be the determinative factor.

**21.** Specifically, section 19.3 of HEMP provides that "[n]o person shall engage in commercial boating in the Hanalei Estuary nor launch, retrieve, moor, store, fuel, maintain, or repair any boat in the Hanalei Estuary that is used for commercial boating without a valid Permit issued by the Planning Commission."

**22.** Specifically, HAR § 13–256–3 provides in relevant part that "[a]ll operators of commercial vessels, water craft or water sports equipment shall apply for a commercial operator permit to be issued by the department." HAR § 13–250–5 defines "department" as the DLNR.

**314**

enacted with environmental concerns in mind. Thus, HEMP implements the policies behind SMAs as stated in HRS § 205A–21. Specifically, section 1.2 of the SMA Rules and Regulations of the County, which essentially reiterates the policies outlined in HRS § 205A–21, provides:

It is the State policy to preserve, protect, and where possible, to restore the natural resources of the coastal zone of Hawai'i. Therefore, special controls on development within an area along the shoreline are necessary to avoid permanent loss of valuable resources and the foreclosure of management options, and to insure that adequate public access is provided to public-owned or used beaches, recreation areas, and natural reserves, by dedication or other means.

As such, it appears that HEMP was promulgated to create a permitting system for commercial boating in order to promote the preservation and protection of the natural resources of the Hanalei SMA and not to protect commercial boating operators from competitive injury. Moreover, section 13 of the SMA Rules and Regulations of the County specifically provides the following civil penalties:

A. Any person who violates any provision of these Rules and Regulations shall be subject to civil fine not to exceed $10,000. In addition to any other penalties, any person who performs any development in violation of this part shall be subject to civil fine not to exceed $500 a day for each day in which such violation persists.

B. Any person violating any provision of these Rules and Regulations may be enjoined by the Circuit Court of the State by mandatory or restraining order necessary or proper to effectuate the purposes of these Rules and Regulations in a suit brought by the Agency.[23]

Thus, based on the foregoing, it appears that a private right of action for damages under HEMP was not contemplated in favor of

commercial boating operators alleging injury to their business interests. *See Med. Soc'y of New Jersey v. AmeriHealth HMO, Inc.,* 376 N.J.Super. 48, 868 A.2d 1162, 1168 (Ct. App.Div.2005) (stating that the court "generally do[es] not infer a private right of action where the statutory scheme contains civil penalty provisions") (internal quotation marks and citation omitted); *Stebbins v. Wells,* 818 A.2d 711, 716 (R.I.2003) (stating that, where an enforcement provision in a statute contemplates a civil fine for violations of an act, rather than a private lawsuit for damages, no private right of action for damages was intended).

### B. *ORMRA*

The authority behind the promulgation of ORMRA is HRS chapter 200 (referred to as the "Ocean Recreation and Coastal Areas Program"). The legislative history behind HRS chapter 200 indicates that the DLNR is essentially responsible for, *inter alia,* "address[ing] *the impact* an activity may have *on the marine environment* when it regulates small boat harbors, boating, and ocean-based recreation activities." 1991 Haw. Sess. L. Act 272, § 1 at 607 (emphases added). In addition, HRS § 200–21 (1993) provides the "declaration of policy" behind boating law:

Declaration of policy. The legislature hereby finds, determines, and declares that this part is necessary to promote and attain:

(1) The full use and enjoyment of the waters of the State;

(2) The safety of persons and the protection of property as related to the use of the waters of the State;

(3) A reasonable uniformity of laws and rules regarding the use of the waters of the State; and

(4) Conformity with, and implementation of, federal laws and requirements.

(Bold emphasis in original.)

Although ORMRA's specific purpose "is to reduce conflicts among ocean water users, especially in areas of high activity," HAR

---

**23.** Section 1.4 of the SMA Rules and Regulations of the County defines "Agency" as the Planning Department of the County of Kaua'i.

§ 13–256–1, ORMRA was generally promulgated "to further the public interest and welfare and to promote safety within the geographical limits of certain portions of Hawaii's ocean waters, navigable streams and beaches[.]" HAR § 13–250–1. As such, it is clear that the policies and objectives behind ORMRA is to promote safety, recreation, and protection and preservation of the environment rather than protection of business interests or competition. Furthermore, HAR § 13–252–7, entitled "Penalties," provides: "Any person who is guilty of violating these rules shall be punished as provided in [HRS § 200–25 (1993)]." In turn, HRS § 200–25 states:

> Fines and Penalties. Any person violating any of the provisions of this part, or of the rules adopted pursuant to this part, shall be guilty of a misdemeanor; provided that in addition to, or as a condition to the suspension of, the fines and penalties, the court may deprive the offender of the privilege of operating any vessel, including, but not limited to, any thrill craft or vessel engaged in parasailing, in the waters of the State for a period of not more than two years.[24]

(Bold emphasis in original.) The HAR also provides the following enforcement rights to the relevant public authority:

> [HAR] § 13–252–8 Powers of arrest. Any police officer or any employee, agent, or representative of the department authorized by the chairperson of the board of land and natural resources who observes any violation by any person of these rules may forthwith arrest the person without a warrant.
>
> [HAR] § 13–252–9 Taking legal custody of property. As incident to a lawful arrest, the arresting authority may take legal custody of any personal property which is the subject of or related to any violation of

these rules. The property may be released only upon approval by the court which has jurisdiction of the case.

> [HAR] § 13–252–10 Attorney general. The attorney general may bring appropriate proceedings to enjoin the continuance of any act or omission in violation of these rules.

(Underscored emphases in original.) Thus, based on the foregoing, it appears that a private right of action for damages under ORMRA was not contemplated in favor of commercial boating operators alleging injury to their business interests. *See Med. Soc'y of New Jersey*, 868 A.2d at 1168; *Stebbins*, 818 A.2d at 716.

Moreover, case law in this jurisdiction and other jurisdictions support the conclusion that, when asserting business tort claims as in the instant case, a private right of action for damages should not be inferred from regulations that were not promulgated with the objective of protecting business competition. In *Robert's Hawai'i*, disappointed bidders for public school bus transportation contracts (the plaintiffs) sued their competitors, alleging that their competitors (the defendants)—acting in concert—created, operated, and controlled shell corporations to circumvent the State of Hawai'i Department of Accounting and General Services' (DAGS) bidding rules and specifications. 91 Hawai'i at 230, 982 P.2d at 859. The plaintiffs' complaint included claims of, *inter alia*, unfair competition in violation of HRS § 480–2, civil conspiracy, and tortious interference with prospective business advantage. *Id.* This court first addressed the issue whether the Hawai'i Public Procurement Code and DAGS' General Conditions afford a private right of action by a disappointed bidder against a successful bidder. *Id.* at 240, 982 P.2d at 869. The defendants alleged that the foregoing statute and regulations do not provide a private right of action and that, there-

---

24. We note that, in 1997, the legislature amended HRS § 200–25. 1997 Haw. Sess. L. Act 204, § 2 at 394. Section 200–25 now provides:

> **Fines and penalties.** Any person violating this part, or any rule adopted pursuant to this part, shall be fined not less than $50 and not more than $1,000 or sentenced to a term of imprisonment of not more than thirty days, or both, for each violation; provided that in addi-

tion to, or as a condition to the suspension of, the fines and penalties, the court may deprive the offender of the privilege of operating any vessel, including but not limited to any thrill craft or vessel engaged in parasailing or water sledding, in the waters of the State for a period of not more than thirty days.

(Bold emphasis in original.)

fore, the plaintiffs' claims were barred. *Id.* The defendants specifically argued "that a claim of tortious interference with prospective business advantage cannot be maintained within a state bidding framework." *Id.* at 257 n. 39, 982 P.2d at 886 n. 39.

However, this court disagreed with the defendants and held that the plaintiffs were not precluded from bringing their claims for relief. *Id.* at 240, 982 P.2d at 869. This court noted that "DAGS encouraged competition in the instant bidding process." *Id.* at 257 n. 39, 982 P.2d at 886 n. 39. Specifically, this court stated:

> Incorporated into DAGS's bid solicitations since the 1970s, Specification M, entitled "Prevention Against Monopolization of School Bus Routes," . . . provided:
>
>> Inasmuch as the State is the sole customer of school bus services in Hawai'i and therefore, school bus service seems to be a unique line of commerce, *the State will deem it to be in its best interest to reject all or part of any bid if the effect of awarding part of or the entire bid may substantially lessen competition or tend to create a monopoly in the school bus industry in any one county within the State of Hawai'i.*
>>
>> . . . .
>
> [S]ection 2.12(a) of the General Conditions provided that "[a] bidder shall be disqualified and his bid automatically rejected for . . . *[p]roof of collusion among bidders,* in which case, all bids involved in the collusive action will be rejected and any participant [in] such collusion will be barred from future bidding until reinstated as a qualified bidder."

*Id.* at 232, 982 P.2d at 861 (some brackets and some ellipses in original) (emphases added). In addition, a contract specialist in DAGS' student transportation branch during the relevant time period testified at trial that:

> DAGS included the foregoing provisions [*i.e.,* Specification M and section 2.12(a) of the General Conditions] *to guarantee fairness, to prevent collusive bidding practices* that DAGS suspected had occurred in the past, *to address price fixing, and to insure that bidders were truly independent.* Spe-

cifically, [the contract specialist] testified that DAGS suspected prior collusive bidding practices between [the defendants. He] explained that *Specification M was enacted to maximize competition within the industry* and to address potential monopolies, but that, to his knowledge, DAGS had never enforced Specification M.

*Id.* (emphases added). Coupled with the fact that DAGS' General Conditions and Special Provisions' enabling statute, former HRS chapter 103 (1985), "did not limit private remedies[,]" this court held that the plaintiffs' claims were viable.

In *Klinger v. Morrow County Grain Growers, Inc.,* 102 Or.App. 375, 794 P.2d 811 (1990), the plaintiff operated a retail gasoline station while the defendant operated a "cardlock" service station, where customers are permitted to serve themselves in making gasoline purchases. The plaintiff contended that, by allowing self-service, the defendant had violated Oregon Revised Statutes (ORS) § 480.330, which prohibited any person, other than the owner, operator, or employee of a gas station, from dispensing fuel. *Id.* at 811–12. The plaintiff claimed that the defendant had "thereby engaged in 'unfair competition' and ha[d] also intentionally interfered with plaintiff's business relationships with his customers." *Id.* at 812. The trial court granted the defendant's motion to dismiss on the basis that the plaintiff was not within the class protected by ORS § 480.330 and that injury to business interests was not among the harms that the statute was intended to prevent. *Id.*

On appeal, the plaintiff

> acknowledge[d] that the legislative objective of ORS [§ ]480.330 is safety, that his business interests are not within the class that it is intended to protect and that injury to his business is not a harm that the statute is intended to prevent. He contends, however, that that is beside the point, because his claims are for common law torts, not for statutory liability or negligence *per se.* He asserts that defendant's violation of ORS [§ ]480.330 constitutes the "improper means" element of the intentional interference claim but is not the

gravamen of the action in itself. Therefore, [the] plaintiff maintains, the protected class/prevented harm test, derived from statutory liability and negligence *per se* cases, is inapposite, and he has adequately stated claims for common law relief.

*Id.* The Oregon Court of Appeals, however, was not convinced by the plaintiff's arguments and stated:

> [The p]laintiff urges us to conclude that ... his common law claims are viable independently of the statutory violation that allegedly also occurred by virtue of [the] defendant's conduct. *The problem is that, were it not for the statutory violation, there could be no misconduct here....* [U]nder [the] plaintiff's allegations, [the] defendant's conduct cannot be improper, unfair[,] or otherwise tortious, unless it violates ORS [§ ] 480.330. *Although [the] plaintiff contends that he is asserting common law claims rather than statutory liability, he has simply attached common law labels to allegations that assert no wrong other than the statutory violation.*
>
> ....
>
> [The p]laintiff understands ... that any statutory violation can supply the "improper means" element for an intentional interference claim. We disagree. It would make no sense for an intentional interference claim to be maintainable simply be-

cause the defendant violated a statute that has no nexus with the business or economic relationships allegedly harmed.... As noted, *the statute has no objective—even incidentally—of protecting business interests or competition.*[25]

*Id.* at 813 (citation omitted) (some emphases in original, some omitted, and some added). Consequently, the Oregon Court of Appeals affirmed the trial court's judgment in favor of the defendant. *Id.; see also Wine & Spirits Wholesalers of Massachusetts, Inc. v. Net Contents, Inc.,* 10 F.Supp.2d 84 (D.Mass. 1998) (holding that plaintiff wholesaler had no private right of action to bring tortious interference with business relations claim where defendant purveyor of wines sold alcohol without a valid license or certificate in violation of Massachusetts law).

As evident in the discussion relating to HEMP and ORMRA, these county and state regulations and rules are unlike the DAGS' General Conditions and Special Provisions in *Robert's Hawai'i.* The purposes and objectives behind the relevant rules promulgated by DAGS were to, *inter alia,* maximize competition, prevent collusion, and to insure that bidders were truly independent. 91 Hawai'i at 232, 982 P.2d at 861. As such, allowing the plaintiffs in *Robert's Hawai'i* to pursue their business tort claims advanced the underlying purposes and objectives of DAGS'

---

25. Appellants contend that "Hawai'i courts have expressly stated that the violation of a statute or rule can be the basis of a tort claim for interference with prospective business advantage." In support of their foregoing contention, Appellants rely on *Kutcher v. Zimmerman,* 87 Hawai'i 394, 957 P.2d 1076 (App.1998). Preliminarily, we note that *Kutcher* involved the tort of interference with prospective *contractual relations,* which is not one of the claims brought by Appellants in the instant case. In addition to the elements required to establish a claim for tortious interference with prospective business advantage, a plaintiff asserting a claim for tortious interference with prospective contractual relations must also prove that "the defendant acted without proper justification." *Id.* at 406, 957 P.2d at 1088. *Kutcher* rejected the seven-factor analysis under the Restatement (Second) of Torts § 767 (1977) in determining whether a defendant acted without proper justification and instead adopted an approach followed by Oregon courts that "liability may arise from improper motives or from the use of improper means." *Id.* at 404, 957 P.2d at 1086 (quoting *Top Serv. Body Shop,*

*Inc. v. Allstate Ins. Co.,* 283 Or. 201, 582 P.2d 1365, 1371 (1978) (en banc)) (emphasis omitted). *Kutcher* stated that, "as an initial premise, ... a plaintiff may show that interference was without proper justification where the interference ... involved 'violations of statutes, regulations, or recognized common-law rules[.]' " *Id.* at 407, 957 P.2d at 1089 (footnote and citation omitted). With respect to the foregoing, *Kutcher* relied on *Leigh Furniture and Carpet Co. v. Isom,* 657 P.2d 293 (Utah 1982). *Leigh* reveals that violations of statutes may include such acts as "secondary boycott" or "price fixing." 657 P.2d at 308. As such, we believe that, as Napali Appellees state, "the statutes that are alleged to be violated must have some nexus to commercial business interests or simply provide ... private rights and remedies." Inasmuch as Appellants in the instant case rely on regulations like HEMP and ORMRA, which, as stated *supra,* were essentially promulgated for the purpose of preserving the environment and promoting safety and recreation, and the element of the absence of proper justification is not germane to the instant case, Appellants' reliance on *Kutcher* is misplaced.

318

General Conditions and Special Provisions. In this case, however, allowing Appellants to pursue their business tort claims would *not* advance the underlying purposes and objectives of HEMP and ORMRA, namely, the preservation and protection of the natural resources of the Hanalei SMA, safety, and recreation inasmuch as HEMP and ORMRA have no objective—even incidentally—of protecting business interests or competition. Moreover, similar to the plaintiff in *Klinger*, Appellants have "simply attached common law labels to allegations that assert no wrong other than the statutory violation." 794 P.2d at 813 (citation omitted). As such, in light of the foregoing, we hold that no private right of action for damages exists under HEMP and ORMRA in the instant case. Accordingly, we believe that the circuit court did not err in granting summary judgment in favor of Napali Appellees and Sheehan Appellees.[26]

## IV. *CONCLUSION*

Based on the foregoing, we affirm the circuit court's December 17, 2003 judgment.

---

**26.** Inasmuch as the claims asserted against Sheehan Appellees are derivative to the claims asserted against Napali Appellees, it follows that Appellants' claims against Sheehan Appellees fail as well.

In addition, although Appellants state that "[t]he circuit court erred in dismissing [their] equitable claims for unjust enrichment *and* injunctive relief," (emphasis added), Appellants did not assign as error the circuit court's dismissal of Appellants' claim for injunctive relief nor did Appellants present an argument with respect to their claim for injunctive relief. As such, Appellants' contention with respect to injunctive relief is deemed waived. *See* Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4) (2003) ("Points not presented . . . will be disregarded[.]"); HRAP Rule 28(b)(7) (2003) ("Points not argued may be deemed waived.").